**ESTATE OF Cecilia M. Bechard FISHER.**

Supreme Judicial Court of Maine.

Argued June 8, 1988.
Decided July 21, 1988.

Nancy D. Metz (orally), Fairfield, for appellant.

Albert L. Bernier (orally), Marden, Dubord, Bernier & Stevens, Waterville, for Fisher.

William P. Niehoff, Waterville, for Maine Children's Home for Little Wanderers.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

WATHEN, Justice.

Theresa Dyer, personal representative of the estate of Cecilia M. Bechard Fisher, appeals from an order of the Somerset County Probate Court on the petition of the surviving spouse, William P. Fisher, Sr., for elective share and on his petition for homestead allowance and allowance for exempt property. On appeal, the personal representative argues that the Probate Court erred in the computation of the elective share and erred in failing to order the manner of its satisfaction. On cross-appeal, Mr. Fisher argues that the Probate Court erred in failing to include a provision for adjustment of the elective share to reflect changes in the value of the assets in the augmented estate at the time of distribution. We find no error in the computation of the elective share, but we conclude that the court erred in failing to order the

manner of its satisfaction and we modify the judgment.

## I.

The relevant facts may be summarized as follows: Decedent Cecilia Fisher died testate on December 29, 1986, leaving as her sole survivor her husband William Fisher, Sr. In her will she provided a number of specific devises, including a devise of her automobile and household furnishings to Mr. Fisher. She directed that the remainder of her estate be placed in a trust. The trust provided that the trustee pay $350 per month out of the trust income and, if necessary, trust principal to Mr. Fisher; that the trustee have sole discretion to pay Mr. Fisher additional funds for his welfare and support; and upon the death of Mr. Fisher that the remaining principal be paid to the Maine Children's Home for Little Wanderers.

Theresa Dyer was appointed personal representative on March 16, 1987. Mr. Fisher timely filed a petition for elective share and a petition for homestead allowance and for allowance of exempt property. The inventory of the estate was filed by the personal representative and subsequently amended on the day of the hearing on Mr. Fisher's petitions. On January 8, 1988, the Probate Court issued its order, finding that Mr. Fisher was entitled to a homestead allowance, an allowance for exempt property, and an elective share in the amount of $101,803.66. The Probate Court also found that certain adjustments should be made to the probate inventory and that certain cash taken from the home should be returned to Mr. Fisher. Finally, the Probate Court provided for adjustment of the amount due William Fisher to reflect any change in actual expenditure from the amount estimated for administrative expense. The order of the court is silent as to manner of satisfying the elective share and the effect of the order upon the continuing status of the testamentary trust.

## II.

This appeal involves the computation and manner of satisfaction of the surviving spouse's elective share of the augmented estate under 18–A M.R.S.A. §§ 2–201 to 2–207 (1981 & Supp.1987). Section 2–201 (1981) in pertinent part provides:

(a) If a married person domiciled in this State dies, the surviving spouse has a right of election to take an elective share of ⅓ of the augmented estate under the limitations and conditions hereinafter stated.

The "augmented estate" is defined in 18–A M.R.S.A. § 2–202 (1981 & Supp.1987) in pertinent part as follows:

The augmented estate means the estate reduced by funeral and administration expenses, homestead allowance, family allowances and exemptions, and enforceable claims, to which is added the sum of the following amounts:

(1) The value of *property transferred* to anyone other than a bona fide purchaser *by the decedent* at any time during marriage, *to or for the benefit of any person other than the surviving spouse*, to the extent that the decedent did not receive adequate and full consideration in money or money's worth for the transfer, if the transfer is of any of the following types:

. . . . .

(2) The value of property *owned by the surviving spouse* at the decedent's death, plus the value of property transferred by the spouse at any time during marriage to any person other than the decedent which would have been includible in the spouse's augmented estate if the surviving spouse had predeceased the decedent *to the extent the owned or transferred property is derived from the decedent by any means other than testate or intestate succession* without a full consideration in money or money's worth. For purposes of this paragraph:

(i) Property derived from the decedent includes, but is not limited to, any beneficial interest of the surviving spouse in a trust created by the dece-

dent during his lifetime, ... any proceeds of insurance, including accidental death benefits, on the life of the decedent attributable to premiums paid by him, ... any property held at the time of decedent's death by decedent and the surviving spouse with right of survivorship, any property held by decedent and transferred by contract to the surviving spouse by reason of the decedent's death .... Premiums paid by the decedent's employer, his partner, a partnership of which he was a member, or his creditors, are deemed to have been paid by the decedent.

(ii) Property owned by the spouse at the decedent's death is valued as of the date of death. ...

(iii) Property owned by the surviving spouse as of the decedent's death, or previously transferred by the surviving spouse, is presumed to have been derived from the decedent except to the extent that the surviving spouse establishes that it was derived from another source.

(emphasis added). The purpose of the augmented estate is twofold:

(1) to prevent the owner of wealth from making arrangements which transmit his property to others by means other than probate deliberately to defeat the right of the surviving spouse to a share, and (2) to prevent the surviving spouse from electing a share of the probate estate when the spouse has received a fair share of the total wealth of the decedent either during the lifetime of the decedent or at death by life insurance, joint tenancy assets and other nonprobate arrangements.

18-A M.R.S.A. § 2-202, Uniform Probate Code Comment. The augmented estate, therefore, begins with the net probate estate and adds

[one] transfers by the decedent during his lifetime which are essentially will substitutes, ... [and two], property of the surviving spouse derived from the decedent and property derived from the

decedent which the spouse has, in turn, given away in a transaction that is will-like in effect or purpose.

18-A M.R.S.A. § 2-202, Uniform Probate Code Comment.

In this case, the beginning point is the net probate estate in the amount of $345,-437.96, as found by the Probate Court and reported in the amended inventory. The inventory reveals that decedent's property consists of the following: the family home owned by decedent and valued at $35,000; and personal property totalling $310,437.96 and consisting of an automobile, household furnishings, jewelry, clothing, cash, four bank accounts in decedent's name and various United States savings bonds. The inventory did not include a joint bank account of decedent and Mr. Fisher and certain savings bonds in the name of decedent payable on death to Mr. Fisher.

The Probate Court then adjusted the net probate estate downward to reflect the erroneous inclusion in the inventory of property contributed by Mr. Fisher, namely, one half of the value of the automobile, a portion of the cash found in the home, and a portion of the personal property. Having corrected the net probate estate, the court computed the augmented estate by including an upward adjustment for the proceeds of a life insurance policy payable to Mr. Fisher, 18-A M.R.S.A. § 2-202(2)(i), and deducting estimated administrative expenses of the estate, homestead allowance, and exempt property. The court thereby valued the augmented estate in the amount of $305,410.96 and the elective share in the amount of $101,803.66.

■ We first address the personal representative's argument that the Probate Court erred in the computation of the elective share. The personal representative focuses on four items: (1) the joint bank account of decedent and Mr. Fisher and the savings bonds in the name of decedent paid on death to Mr. Fisher; (2) the money in decedent's home at her death; (3) the administrative expenses; and (4) the

trust provision of the will. We are required to uphold the factual findings of the Probate Court on review, unless such findings are clearly erroneous. *Estate of Cushman*, 501 A.2d 811, 813 (Me.1985).

■ First, the personal representative argues that one half of the joint bank account and the full redemption value of the savings bonds, held in decedent's name and paid on death to Mr. Fisher, should be included in the augmented estate, under section 2–202(2)(i). Section 2–202(2)(i) includes property owned by the surviving spouse to the extent it is derived from the decedent, including "any property held at the time of decedent's death by decedent and the surviving spouse with right of survivorship" and "any property held by decedent and transferred by contract to the surviving spouse by reason of the decedent's death." Section 2–202(2)(iii), however, provides: "[p]roperty owned by the surviving spouse as of the decedent's death ... is presumed to have been derived from the decedent *except* to the extent that the surviving spouse establishes that it was derived from another source." (emphasis added).

In this case, Mr. Fisher testified that he worked at Cascade Woolen Mill, that his wife, the decedent, handled his paycheck and all of the money, that during the period they were divorced but living together,[1] she deducted $50 from his check for room and board and put the rest in his bank account; that after they remarried, she divided his check into various amounts for different purposes and held them in various places, including bonds and his bank account, which was the joint account. He further testified that she was also employed and worked until she was 65. He testified that she maintained separate accounts in her name alone so that his children from a prior marriage could not claim the funds if he predeceased her. For this reason, he believed she never put her own funds in the joint account. He also testified that she started putting funds from his paycheck and funds from her paycheck into bonds instead of depositing the money into the bank. Again, she purchased numerous bonds in her name alone without naming him as a beneficiary and approximately twenty bonds in her name with him as the beneficiary. For the same reasons given as to the bank account, he believed that the twenty bonds were purchased with funds from his paycheck. This testimony, unrebutted by the personal representative, adequately supports the Probate Court's conclusion that the joint bank account and the twenty bonds were derived from his employment income at Cascade Woolen Mills and not from decedent. Therefore, the Probate Court did not err in excluding those funds from the augmented estate.

■ Second, sufficient evidence supports the Probate Court's conclusion that one half of the cash included in the inventory was contributed by Mr. Fisher. Mr. Fisher testified that he believed the money in their safe deposit box was money the decedent saved out of his checks. He also testified that he thought that the biggest part of the money came from his paycheck because she began setting aside money in order to purchase a car and, after she bought the car, she continued the same practice.

■ Third, the personal representative argues that the Probate Court had insufficient evidence to support its findings as to the administrative expenses. The Probate Court, however, noting that some of the expenses were estimates, provided that the personal representative would adjust Mr. Fisher's share to reflect the variance in the actual disbursement from the estimate. We find no error in this approach.

■ Finally, we reject the personal representative's argument that Mr. Fisher's beneficial interest in the testamentary trust should be included in the computation of the augmented estate and the elective

---

**1.** Decedent and Mr. Fisher were first married in 1970; they were divorced in 1973 but continued to live together until they remarried in 1984 or 1985.

share. His interest in the trust does not enter the computation as an addition in order to reach the augmented estate, but rather, the underlying assets funding the trust are already included as part of the net probate estate, the beginning point of the computation. *See* 18–A M.R.S.A. § 2–202(2) ("value of property owned by the surviving spouse ... derived from the decedent by any means other than testate or intestate succession"); *see also* Kurtz, *The Augmented Estate Concept under the Uniform Probate Code: In Search of an Equitable Elective Share* 62 Iowa L.Rev. 981, 1037 (1977) [hereinafter "Kurtz, *The Augmented Estate Concept*"]. We conclude that the Probate Court committed no error in computing the amount of the elective share.

### III.

■ The Probate Court erred, however, in failing pursuant to 18–A M.R.S.A. § 2–205(d) (1981) to order the method of payment of the elective share. Section 2–205(d) in pertinent part provides that: "After notice and hearing, the court shall determine the amount of the elective share and shall order its payment from the assets of the augmented net estate or by contribution as appears appropriate under section 2–207." In this case, the Probate Court failed to determine the sources of funds to satisfy the elective share, and failed to value property passing to Mr. Fisher for the purpose of charging his elective share under 18–A M.R.S.A. § 2–207 (1981). On appeal, the parties argue different interpretations of section 2–207 used to compute the amount to be charged to the surviving spouse against his elective share. Because the interpretation of section 2–207 would be certain to arise again on remand, in the interest of judicial efficiency, we address the arguments and determine the manner of satisfying the elective share.

■ Section 2–207 in pertinent part provides:

(a) In the proceeding for an elective share, values included in the augmented estate which pass or have passed to the surviving spouse, or which would have passed to the spouse but were renounced, are applied first to satisfy the elective share and to reduce any contributions due from other recipients of transfers included in the augmented estate. *For purposes of this subsection, the electing spouse's beneficial interest* in any life estate or *in any trust* shall be computed as if *worth ½ of the total value of the property* subject to the life estate, or *of the trust estate, unless higher or lower values for these interests are establishd (sic) by proof.*

(b) Remaining property of the augmented estate is so applied that liability for the balance of the elective share of the surviving spouse is equitably apportioned among the recipients of the augmented estate in proportion to the value of their interests therein.

(emphasis added). The purpose of section 2–207 is

[to protect] a decedent's plan as far as it provides values for the surviving spouse. The spouse is not compelled to accept the benefits devised by the decedent, but if these benefits are rejected, the values involved are charged to the electing spouse as if the devises were accepted.

18–A M.R.S.A. § 2–207, Uniform Probate Code Comment. By exercising the right to an elective share, the surviving spouse does not automatically renounce his interest under the will. *See* 18–A M.R.S.A. § 2–206, Uniform Probate Code Comment ("The election does not result in a loss of benefits under the will (in the absence of renunciation) because those benefits are charged against the elective share under Sections 2–201, 2–202 and 2–207(a)."). This point is further explained as follows:

Unless the surviving spouse renounces the provisions of the will, her choice of the elective share would not affect her share under the will or by intestate succession. Property passing to her by the will would be charged against her elective share. ... If she renounces ben-

efits under the will, the property she would otherwise have received would be treated as if she had predeceased testator and the value of the benefits rejected would be charged against the elective share.

Maine Probate Law Revision Commission, Report of the Commission's Study and Recommendations Concerning Maine Probate Law 85 (1978) [hereinafter referred to as "Maine Probate Law Revision Commission Report"].

In the present case, Mr. Fisher has not renounced his interest under the will. Therefore, in determining what benefits are charged against his elective share under section 2–207, the relevant language is "values included in the augmented estate which pass or have passed to the surviving spouse." The disputed item on appeal is Mr. Fisher's beneficial interest in the testamentary trust. The trust provides for the payment of $350 per month to Mr. Fisher, and any additional payments, in the trustee's sole discretion, as she deems necessary for Mr. Fisher's welfare and support.[2]

Mr. Fisher argues that the language of section 2–207 does not include his interest in the trust, because the only items that "pass or have passed" to him are the life insurance proceeds and the one-half value in the automobile. Alternatively, he ar-

gues that even if his trust interest is included, he has rebutted the presumed value by introducing the present value of his interest in the fixed monthly payment. The personal representative argues that section 2–207 does include the testamentary trust and argues further that Mr. Fisher did not rebut the presumed value because he failed to offer any evidence concerning the present value of his beneficial interest in the discretionary payments, as distinguished from the fixed monthly payment, under the trust.

■ We interpret section 2–207 to include both devises and inter vivos gifts and thus to include the beneficial interest in a trust, whether it is testamentary or inter vivos. *See, e.g.,* Effland, *The Elective Share, reprinted in* Maine Probate Law Revision Commission Report at 77;[3] Kurtz, *The Augmented Estate Concept,* 62 Iowa L.Rev. at 1045 ("The verb 'pass' obviously refers to property passing to the spouse by testate or intestate succession.")

■ Further, we interpret the last sentence of section 2–207(a) as creating a rebuttable presumption[4] that the value of the electing spouse's beneficial interest in the trust is one half of the property of the trust estate.[5] Unless rebutted, the value of Mr. Fisher's beneficial interest in the

---

**2.** The trust provision of the will in pertinent part provides:

A. Said Trustee shall distribute out of the trust net income and, insofar as necessary, out of the trust principal, the sum of three hundred fifty dollars ($350.00) per month to my husband, said WILLIAM P. FISHER SR., so long as he shall live.

B. Additionally said Trustee shall pay to or use for the benefit of my husband, WILLIAM P. FISHER SR., so much of the net income and principal of the Trust as the Trustee, in the Trustee's sole discretion, shall deem necessary for the welfare and support of my husband, taking into consideration all other means known to the Trustee, and available to my said husband, WILLIAM P. FISHER SR.

**3.** Professor Richard W. Effland, reporter for the Uniform Probate Code Project in Arizona, in an analysis of the Code elective share provisions stated: "The elective share should disrupt the

estate plan as little as possible. Therefore testamentary and other provisions for the spouse, *even though limited to a life estate,* should be counted against the elective share." Effland, *The Elective Share, reprinted in* the Maine Probate Law Revision Commission Report at 75 (emphasis added).

**4.** 18–A M.R.S.A. § 2–207, Uniform Probate Code Comment, in pertinent part states: "The second sentence of new subsection (a) provides a rebuttable presumption of the value of a life estate or an interest in a trust when this form of benefit is provided for an electing spouse by the decedent's plan."

**5.** Kurtz in his article gives the following example of the application of section 2–207 to a spouse's interest in a life estate or a trust:

Thus, if O conveyed Blackacre to Spouse S for life, remainder to X, and at O's death Blackacre is then worth $100,000, the value of S's interest is presumed to be $50,000. This re-

trust would be one half of the total value of the property of the trust and would exceed the amount of his elective share.

 Based on our review of the record, we find that Mr. Fisher rebutted the presumption by proving the present value of his beneficial interest in the trust. In order to calculate the present value of a beneficial interest in a trust, it is necessary to establish the beneficiary's age, the rate of capitalization, and the amount of annual income payable to the beneficiary. Mr. Fisher offered into evidence his birth certificate establishing his date of birth as March 17, 1926. Further he introduced and the Probate Court took judicial notice of standard mortality tables and Internal Revenue Service regulations and tables regarding computation of present values of annuities and life estates using a ten-percent rate of capitalization. For federal estate tax purposes, Treas.Reg. § 20.2031 provides for the valuation of property. Specifically, Treas.Reg. § 20.2031–7 applies to the "[v]aluation of annuities ... for estates of decedents dying after November 30, 1983. For these estates, the official tables reflect a ten-percent rate of capitalization. Treas.Reg. § 20.2031–7(f), Table A.[6] On appeal, the personal representative does not dispute the rate of capitalization, but argues solely that the presumption remains unrebutted because no proof was offered as to the present value of the discretionary payments.

With respect to the annual income, we find, for purposes of computing the present

value, the amount payable to Mr. Fisher is limited to the fixed amount under the trust of $350 per month totalling $4,200 per year. The disbursement of any additional income is within the sole discretion of the trustee. Although we find no decisional law concerning a person's beneficial interest in this type of potential income in the context of the Probate Code, we look to the analogue provided by the law of federal estate and gift taxation.[7] In that context, the applicable approach for evaluating the discretion of the trustee to pay funds to a beneficiary is to determine whether the trustee is governed by ascertainable external standards such that a beneficiary could request a court of equity to apply and compel compliance by the trustees. *Jennings v. Smith,* 161 F.2d 74, 77–78 (2d Cir.1947).[8] *See also e.g.,* R. Stephens, G. Maxfield and S. Lund, *Federal Estate and Gift Taxation* ¶ 4.10[5] at 4–186–87 (5th ed. 1983); C. Lowndes, R. Kramer and J. McCord, *Federal Estate and Gift Taxes* § 8.9 at 156–57 (3d ed. 1974). Examining the terms of the trust before us, we conclude that the trustee's standard for disbursement of funds for Mr. Fisher's welfare and support is not ascertainable. Because the potential interest is too remote and tenuous to place a present value upon it, the interest is not included in computing the charge against the elective share. Thus, the personal representative's challenge fails.

We conclude that the present value of Mr. Fisher's beneficial interest in the trust

buttable presumption should apply to remainders in the spouse following a legal life estate or income interest. Thus, if O transferred property to T in trust to pay the income to X for life and upon X's death to pay the corpus to S, the value of S's interest is presumed to be one-half.

Kurtz, *The Augmented Estate Concept,* 62 Iowa L.Rev. at 1046. *See also id.* at 1052; J. Mitchell, *Maine Probate Manual* 310–11, 319 (1983).

**6.** For purposes of Treas.Reg. 20.2031–7 "the age of a person is to be taken as the age of that person at his or her nearest birthday." Treas. Reg. 20.2031–7(a)(2). Therefore, Mr. Fisher established that at the date of decedent's death, December 29, 1986, he was 60 years 9 months and thus was nearest to his 61st birthday.

**7.** We recognize that for estate tax purposes, the emphasis is usually on the decedent who is also the trustee to determine whether as trustee he has control over the funds. For our purposes, the focus is on the beneficiary to determine the likelihood of his acquiring funds from the trust.

**8.** In *Jennings,* the court found the power to pay income on the "trustees' determination that disbursement of the income was necessary to enable the beneficiary to whom it might be allotted to maintain himself and his family 'in comfort and in accordance with the station in life to which he belongs'" was not included in the decedent's estate. *Id.* at 78.

may be calculated in accordance with the following factors: A 61–year-old man receiving $4,200 per year payable in monthly installments of $350 at a ten-percent rate of capitalization. Using the table based on a ten-percent rate, the computation is $4,200 × 7.3267, which equals $30,772.14. *See* Treas.Reg. 20.2031–7(f), Table A. Further, because the payments are payable monthly instead of annually, the figure of $30,772.14 is then multiplied by 1.0450 to reach a final figure of $32,156.89. *See* Treas.Reg. 20.2031(b)(2).

 In determining the manner of satisfying the elective share, the present value of Mr. Fisher's beneficial interest in the trust, $32,156.89, should be charged against his elective share. Also, the following items should be charged against his elective share: value of decedent's interest in the automobile, less the exemption, $4,157.00;[9] value of household furnishings less the exemption, $1,324.00;[10] and value of the life insurance proceeds, $5,000.00. In addition, because Mr. Fisher did not renounce his interest under the will, he will receive each of these items, including the monthly trust payments, as provided in the will. The Probate Court is not authorized to substitute the cash equivalent or a lump sum distribution for the items passing under the will. 18–A M.R.S.A. § 2–207, 3–906 (1981). After deducting the value of these items from his elective share of $101,803.66, Mr. Fisher is left with a balance of $59,165.77. Therefore, consistent with this opinion, the order of the Probate Court is modified to provide that Mr. Fisher receive the property as provided under the will, including the monthly payments from the trust; that the value of the property received under the will, including the

present value of the trust, and the life insurance proceeds received outside the will but included in the augmented estate, shall be charged against his elective share, and that the remaining balance of $59,-165.77 shall be paid to Mr. Fisher subject to adjustment for the actual expenses of administration.

## IV.

 Finally, Mr. Fisher's argument on his cross-appeal concerning adjustment at the time of distribution of the elective share for any changes in the value of the assets in the augmented estate was not preserved and we will not consider it for the first time on appeal. *Poire v. Manchester*, 506 A.2d 1160, 1164 (Me.1986).

The entry is:

The judgment of the Somerset County Probate Court is modified to include the following provisions consistent with this opinion: (1) Mr. Fisher is to receive property as provided under the will; (2) value of the property in the augmented estate passing to Mr. Fisher, i.e., present value of beneficial interest in trust, value of automobile, household furnishings, and life insurance, totalling $42,637.89, shall be applied first to satisfy the elective share; (3) remaining balance of elective share in the amount of $59,165.77, subject to adjustment for administrative expenses, shall be satisfied by equitably apportioning amount among recipients of the augmented estate in proportion to the value of their interests therein.

As modified, judgment affirmed.

All concurring.

---

9. Mr. Fisher is entitled to an exemption of $3,500.00. 18–A M.R.S.A. § 2–402 (1981). Of that $3,500.00, $405.00 was taken against the automobile and $3,095.00 was taken against the household furnishings. The value of decedent's interest in the automobile was $4,562.00.

10. The decedent devised all the household furnishings totalling $5,369.00 to Mr. Fisher. The Probate Court found that items valued at $950.00 belonged to Mr. Fisher and deducted that figure from the total to reach $4,419.00.

The Probate Court then ordered that, of the $4,419.00, Mr. Fisher indicated in an exhibit that he wanted items valuing $3,095.00, that the exemption would be applied to these items, and that Mr. Fisher was to turn over the remaining items to the personal representative. Under section 2–207, however, the value of the items to which Mr. Fisher was entitled under the will, but chose not to accept, must be charged against his elective share.