IN RE ESTATE OF HAROLD S. MYERS, DECEASED.
LESLEY C. MYERS, APPELLANT, V. LESLEY C. MYERS,
PERSONAL REPRESENTATIVE OF THE ESTATE OF HAROLD S. MYERS,
DECEASED, APPELLEE.
594 N.W. 2d 563

Filed April 29, 1999.   No. S-98-340.

James L. Haszard, of McHenry, Haszard, Hansen & Roth, for appellant.

Thomas J. Fitchett, guardian ad litem.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.

## NATURE OF CASE

Lesley C. Myers (Myers), spouse of the decedent, Harold S. Myers, filed a petition in the county court, seeking to take her

elective share of the decedent's augmented estate pursuant to Neb. Rev. Stat. § 30-2313 et seq. (Reissue 1995). The county court determined that Myers' elective share had been satisfied by her interest in an inter vivos trust established by the decedent and that Myers was not entitled to anything further from the decedent's augmented estate. Myers appeals from that determination. For the reasons stated herein, we affirm the judgment of the county court.

## FACTUAL BACKGROUND

The decedent died on December 26, 1996. The decedent's will provided, inter alia, that his tangible personal property was to be left to Myers and that his residuary estate was devised to the Harold S. Myers Trust (the trust), an inter vivos trust, with Norwest Bank Nebraska, N.A. (Norwest), designated as the trustee. Ultimately, the property paid in to the trust was valued at $6,041,712.95.

The trust, as modified by a later amendment, provides, in relevant part, that the trust corpus should be divided between two shares, the marital share and the family share. The allocation of the trust corpus between the marital and family shares is to be determined by the trustee, based on whatever division of the assets would minimize the payment of federal estate taxes. The income from both the marital and family shares is to be paid to Myers, for her benefit, during her lifetime. The trustee also is empowered to invade the trust principal of either share if necessary to provide for Myers' support.

The terms of the trust further provide, in relevant part, that after Myers' death, the remaining assets in the marital share are to be added to the family share. After Myers' death and when the decedent's living children are all at least 22 years of age, the trustee is to divide the trust property to create equal shares for the benefit of each of the decedent's children born as a result of his union with Myers.

If any of those children are at least 35 years of age at the time of Myers' death, the trust property of those shares will be distributed to the children outright. Alternatively, the trustee will distribute one-third of the remaining assets to each child when the child attains the age of 25 years, one-half of the remaining

assets when the child attains the age of 30 years, and all the remaining assets when the child attains the age of 35 years. In the interim, the trustee is directed to pay, to or for the benefit of each child, as much of the income and principal of the trust as is necessary to provide for the child's welfare.

At the time of the decedent's death, he had five living children, the three youngest of whom were born from his union with Myers and were still minors when their father died. The two older children, born of a previous marriage, were intentionally omitted from the will and the trust and are not parties to this appeal.

## PROCEDURAL HISTORY

On January 3, 1997, Myers filed an application in the county court seeking informal probate of the decedent's will and her own appointment as personal representative of the estate. The application was granted on the same day.

On September 24, 1997, Myers timely filed a petition to take her elective share of the decedent's augmented estate. She alleged that she was entitled to 50 percent of the augmented estate, which she valued at $7,249,020.62. The parties to this appeal later stipulated to a value for the augmented estate of $6,578,712.95. Myers did not renounce any provisions of the will or the trust.

In response to Myers' petition for elective share, Norwest filed a motion for the county court to appoint a guardian ad litem to represent the interests of Myers' minor children, because the children, as the remainder beneficiaries of the trust, had an interest potentially adverse to that of Myers and Norwest could not adequately represent that interest due to its duty of impartiality to all the trust beneficiaries. A guardian ad litem was appointed, without objection, to represent the children.

Subsequently, Myers and the guardian ad litem disputed the amount to which Myers was entitled under the elective share provision. In short, Myers claimed that she was entitled to take 50 percent of the augmented estate and still receive the benefit of her interest in the trust. The guardian ad litem asserted that the amount of Myers' elective share should first be offset by the value of her interest in the trust.

The guardian ad litem proposed that the value of Myers' interest in the trust be valued as a life estate in the trust property, using a calculation based on Internal Revenue Service guidelines for establishing, for tax purposes, the present value of a life estate. The guardian ad litem argued that based on such calculations, Myers had already received more than 50 percent of the augmented estate by virtue of her interest in the trust and was not entitled to anything more from the augmented estate.

In response, Myers claimed that even if the value of her interest in the trust was to be offset against her elective share, the court should attempt to value her interest based on a projection of the actual income of the trust. In support of this argument, Myers noted that a significant portion of the trust property was stock in Transcrypt International, Inc. (Transcrypt). At that time, Transcrypt was not paying any dividends and thus not generating any income for Myers as beneficiary of the trust.

The county court ultimately issued a ruling in accord with the suggestions of the guardian ad litem. The court determined that under § 30-2319(a), the present value of Myers' interest in the trust should first be applied in satisfaction of the elective share. The court found that "the correct approach in valuing the present interest created in the surviving spouse is by utilizing the standard mortality tables, IRS Regulations and State Inheritance Tax Regulations that would apply to a property in which a life estate and remainder interest were created." Based on those regulations, the county court determined that Myers' interest in the trust should be valued at 86.127 percent of the value of the trust property.

Consequently, the county court found that Myers' elective share had been fully funded by her present interest in the trust and that she was not entitled to anything further as her share of the augmented estate. Myers appealed from that determination. Her appeal was taken directly from the county court to the Nebraska Court of Appeals pursuant to Neb. Rev. Stat. § 30-1601 (Cum. Supp. 1998) and was moved to our docket pursuant to our authority to regulate our caseload and that of the Court of Appeals.

## ASSIGNMENTS OF ERROR

Myers assigns, consolidated and restated, that the county court erred (1) in determining that her elective share should be offset by the value of her interest in the trust and (2) in determining the value of her interest in the trust.

## STANDARD OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Foxley*, 254 Neb. 204, 575 N.W.2d 150 (1998). See, also, *In re Estate of Disney*, 250 Neb. 703, 550 N.W.2d 919 (1996) (holding challenge to statutory election to be reviewed for error appearing on record).

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Central States Found. v. Balka, ante* p. 369, 590 N.W.2d 832 (1999).

## ANALYSIS

### OFFSET OF ELECTIVE SHARE

The right of a surviving spouse to take an elective share of a decedent's estate is established by § 30-2313(a), which states, in relevant part, that "if a married person domiciled in this state dies, the surviving spouse has a right of election to take an elective share in any fraction not in excess of one-half of the augmented estate under the limitations and conditions hereinafter stated."

The "augmented estate" is defined by § 30-2314, in material part, as the probate estate, less certain allowances, plus the value of property owned by the spouse at the decedent's death and which would have been includable in the surviving spouse's augmented estate if that spouse had predeceased the decedent, to the extent the owned property was derived by the surviving spouse from the decedent without a full consideration in money or money's worth. See *In re Estate of Carman*, 213 Neb. 98, 327 N.W.2d 611 (1982), *abrogated on other grounds, In re Estate of Disney, supra*. The augmented estate also includes several

categories of inter vivos transfers made by a decedent. See § 30-2314.

> The purpose of the concept of augmenting the probate estate in computing the elective share is twofold: (1) to prevent the owner of wealth from making arrangements which transmit his property to others by means other than probate deliberately to defeat the right of the surviving spouse to a share, and (2) to prevent the surviving spouse from electing to· a share of the probate estate when the spouse has received a fair share of the total wealth of the decedent either during the lifetime of the decedent or at death by life insurance, joint tenancy assets and other non-probate arrangements.

Neb. Rev. Stat. Ann. § 30-2314, comment at 83 (Michie 1995).

> The combined effect of the statutory elective share and augmented estate concepts is intended to protect the surviving spouse of a decedent against donative inter vivos transfers by devices which would deprive the survivor of a "fair share" of the decedent's estate and at the same time prevent the surviving spouse from receiving more than such share by allowing the acceptance of certain transfers and insurance proceeds and also yet elect against the will.

*In re Estate of Carman*, 213 Neb. at 100, 327 N.W.2d at 613. Accord *In re Estate of Ziegenbein*, 2 Neb. App. 923, 519 N.W.2d 5 (1994).

The parties agree that in this case, the decedent's residual estate, devised to the trust, is part of the decedent's augmented estate. Resolution of Myers' first assignment of error turns on our interpretation of § 30-2319(a), which provides:

> In the proceeding for an elective share, property which is part of the augmented estate which passes or has passed to the surviving spouse by testate or intestate succession or other means and which has not been renounced, including that described in section 30-2314, is applied first to satisfy the elective share and to reduce the amount due from other recipients of portions of the augmented estate.

Myers contends that her present interest in the trust is not property which "has passed to the surviving spouse by testate or intestate succession or other means" and that the county court

erred in so determining. Interpretation of this section presents an issue of first impression for this court.

The general effect of § 30-2319 is that

> if the surviving spouse has been provided for by the decedent during his lifetime through outright gifts, joint tenancy property, life insurance, living trust provisions, annuities, or pension plans other than Social Security benefits, the amount of such property received reduces the elective share and may wipe it out entirely. That is, first the amount is included in the augmented estate and then set off against the elective share as having been already received.

Thomas M. Davies and William E. Olson, Jr., *Interspousal Transfers and Augmented Estate*, 9 Creighton L. Rev. 481, 486 (1976) (providing example of inter vivos trust with income interest to surviving spouse for life and remainder to children charged against surviving spouse's elective share).

We believe the better interpretation of § 30-2319 requires the present value of inter vivos trust benefits to be charged against a surviving spouse's elective share. This interpretation is consistent with the function of § 30-2319 and the language and purpose of the elective share statutes.

As noted above, the dual purposes of the elective share provisions of the Nebraska Probate Code are to prevent a spouse from being denied a fair share of the decedent's estate, but also to prevent the surviving spouse from obtaining more than a fair share of the estate when he or she has already received a share of the estate through some other means. To allow a surviving spouse to elect against the will and still retain the benefit of a trust interest that was clearly intended as a testamentary substitute would frustrate the purpose of the elective share statutes. In construing a statute, a court must look to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served, and then must place on the statute a reasonable or liberal construction that best achieves the statute's purpose, rather than a construction that defeats the statutory purpose. *Central States Found. v. Balka, ante* p. 369, 590 N.W.2d 832 (1999); *Brown v. Wilson*, 252 Neb. 782, 567 N.W.2d 124 (1997).

Furthermore, other provisions of the Nebraska Probate Code indicate that an interest in an inter vivos trust is "property which passes or has passed to the surviving spouse by testate or intestate succession or other means." § 30-2319. "Property," in the Nebraska Probate Code, "includes both real and personal property *or any interest therein* and means anything that can be the subject of ownership." (Emphasis supplied.) Neb. Rev. Stat. § 30-2209(36) (Reissue 1995). It is clear that the beneficiary of an inter vivos trust has an "interest" in the trust property within the meaning of this section.

Similarly, § 30-2314(2)(i) provides that the augmented estate includes "[a]ny property derived from the decedent including, without limitation to, any beneficial interest of the surviving spouse in a trust created by the decedent during his or her lifetime . . . ." To conclude that "property" in the augmented estate calculations of § 30-2314(2)(i) means something different than "property" under § 30-2319(a) would result in inconsistent constructions of the two related sections. A court, however, will construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme. See, *Central States Found. v. Balka, supra*; *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998).

Moreover, the inclusion of an inter vivos trust interest in § 30-2314(2)(i) indicates that such interests were also to be included in the calculations required under related sections. The components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *Central States Found. v. Balka, supra*; *In re Invol. Dissolution of Battle Creek State Bank*, 254 Neb. 120, 575 N.W.2d 356 (1998).

Nebraska's § 30-2319 was based on Uniform Probate Code § 2-207 (1969). In construing a Maine statute based on the 1975 version of § 2-207, the Supreme Judicial Court of Maine concluded that a surviving spouse's trust interest was chargeable against an elective share. *Estate of Fisher*, 545 A.2d 1266 (Me. 1988).

The Maine statute, Me. Rev. Stat. Ann. tit. 18-A, § 2-207 (West 1998), provided, in relevant part: " 'In the proceeding for an elective share, values included in the augmented estate which pass or have passed to the surviving spouse . . . are applied first to satisfy the elective share . . . .' " *Estate of Fisher*, 545 A.2d at 1271. The surviving spouse argued that his interest in a testamentary trust had not " 'passed' " to him within the meaning of the statute. *Id.* at 1272. The court rejected this argument, concluding that the statute should be interpreted "to include both devises and inter vivos gifts and thus to include the beneficial interest in a trust, whether it is testamentary or inter vivos." *Id.* See, also, Sheldon F. Kurtz, *The Augmented Estate Concept Under the Uniform Probate Code*, 62 Iowa L. Rev. 981 (1977) (concluding trust interests "have passed" to surviving spouse within meaning of Uniform Probate Code § 2-207 (1975)).

We find the foregoing authority to be helpful in reaching our own interpretation of § 30-2319. Accordingly, we hold that a surviving spouse's beneficial interest in an inter vivos trust created by the decedent is "property which passes or has passed to the surviving spouse" within the meaning of § 30-2319(a) such that it should be charged against the amount of the surviving spouse's elective share of the augmented estate. Myers' first assignment of error is without merit.

VALUATION OF TRUST INTEREST

Myers also assigns that the county court erred in valuing her interest in the trust. The county court valued Myers' interest in the trust according to the regulations that would be used to calculate, for tax purposes, the present value of a life estate in the trust property. Resolution of this issue requires us to conduct a comprehensive examination of the tax valuation method relied upon by the county court.

Neb. Rev. Stat. § 77-2008 (Reissue 1996) provides that "[b]equests, devises, or transfers of property or any interest therein in trust or otherwise for the life of the legatee, devisee, or transferee" shall be subject to inheritance taxes and that the "property or interests therein shall be appraised . . . at what was the fair market value thereof at the time of the death of the decedent." The fair market value is the present value as determined

under the Internal Revenue Code and its applicable regulations. 316 Neb. Admin. Code, ch. 17, § 001.01 (1984). "The present value of the annuities, life estates, terms for years, remainders, and reversions is determined under 26 C.F.R. 20.2031-7 (1983) . . . or as subsequently revised." 316 Neb. Admin. Code, ch. 17, *supra.*

It is provided in 26 C.F.R. § 20.2031-7 at 313 (1998), in relevant part:

> [T]he fair market value of . . . life estates . . . is their present value determined by use of standard or special section 7520 actuarial factors. These factors are derived by using the appropriate section 7520 interest rate and, if applicable, the mortality component for the valuation date of the interest that is being valued.

Under 26 C.F.R. § 20.7520-1(b)(1)(i) (1998), in order to determine the present value of a life estate, one should utilize a rate of return, rounded to the nearest two-tenths of 1 percent, that is equal to 120 percent of the applicable federal midterm rate, compounded annually, for the month in which the valuation date falls. For estate tax purposes, the date of valuation is the date of the decedent's death. § 20.7520(b)(1)(ii).

According to the tables published monthly in the Internal Revenue Bulletin, the appropriate interest rate for December 1996 was 7.59 percent. Rev. Rul. 96-57, 1996-2 C.B. 82. This rate rounds up to 7.6 percent. See § 20.7520-1(b)(1)(i). Based on this rate, the single life remainder factor, where the life estate is measured by the life of a 44-year-old person, is .13873. § 20.2031-7(d)(6), table S.

In order to determine the present value of the life estate, the correlative single life remainder factor is subtracted from 1.000000, and the resulting actuarial factor is multiplied by the value of the property. § 20.2031-7(d)(2)(iii). In the present case, the resulting actuarial factor is .86127. See *id.* See, also, § 20-2031-7(d)(5), example 1 (providing example of valuation method for income interest in property).

Based upon that actuarial factor, the present value of Myers' interest in the trust, for estate tax purposes, rounded to the nearest cent, was $5,230,546.11. Based upon those calculations, since the present value of Myers' interest in the trust exceeded

50 percent of the augmented estate, the county court determined that the elective share amount had been fully satisfied by Myers' interest in the trust and that she was entitled to no further compensation.

Myers does not argue that the county court erred in its calculations under the tax valuation method; rather, she claims error in the very use of the tax valuation method. Myers does not claim, for instance, that the county court relied upon the wrong regulations or mortality tables or interest rate calculations, or that the court made a mathematical mistake. In other words, Myers claims that the tax valuation method is itself inadequate under the circumstances but she does not assign error to any particular aspect of the process used in the instant case.

Myers' contention on appeal is that the tax valuation method resulted in an overvaluation of her interest in the trust. Primarily, she notes that at the time of the valuation, much of the trust principal consisted of Transcrypt stock, which at that time was paying no dividends and generating no income for Myers. Thus, Myers claims that the assumption of an income stream of 7.6 percent dramatically overstates the actual return to her as the income beneficiary.

Even assuming this to be the case, we are unpersuaded by Myers' contention that some different method should have been used to calculate the "actual" value of her income interest in the trust. We first note that although Myers has suggested that some alternate method of valuation be used, she has neither proposed such a method nor directed us to any authority that would be helpful in creating one. Myers clearly states that the goal of the valuation should be to predict the actual income of the trust, but she offers no means for achieving this goal, much less a means more appropriate or persuasive than the method used in the instant case. Under such circumstances, Myers has not met her burden of demonstrating error on the record of the county court.

Moreover, we note that the Supreme Judicial Court of Maine used a similar method in a case presenting similar issues. See *Estate of Fisher*, 545 A.2d 1266 (Me. 1988). In that case, the court established the present value of a trust interest providing a fixed income by treating it as an annuity under the appropriate federal tax regulations. *Id.*

We do not hold that the tax valuation method is the only appropriate method for determining the present value of beneficial interests in elective share proceedings. We simply determined that under the facts presented in the instant case, the county court did not err in using the tax valuation method as the basis for its judgment. While we recognize that this method is at best imperfect, "[t]he whole problem of valuing individual life interests by resort to mortality tables is at best a matter of educated guesswork. The courts cannot demand perfection in an area so fraught with speculation and uncertainty." *McMurtry v. Commissioner of Internal Revenue*, 203 F.2d 659, 666 (1st Cir. 1953).

We are not persuaded that under the circumstances, any other method would have provided a better assessment of the present value of Myers' interest in the trust, given that the trust principal can at any time be invaded by the trustee for Myers' support. While the tax valuation method of valuing the present interest of a beneficial interest in a trust may carry the risk of overvaluation of the trust interest, under § 30-2319 the surviving spouse has the option of avoiding that risk by renouncing the benefit of the trust. See Neb. Rev. Stat. § 30-2352(c) (Reissue 1995). Valuation becomes necessary only when the surviving spouse attempts to claim both an elective share and the benefit of a trust, at which point the risk of overvaluation is properly borne by the surviving spouse.

Thus, we determine that the county court did not err in calculating the present value of Myers' interest in the trust. While by no means perfect, the tax valuation method utilized by the county court is grounded in well-reasoned authority and provides for sensible and consistent results under these circumstances. Accordingly, we find Myers' second assignment of error to be without merit.

## CONCLUSION

The county court correctly concluded that § 30-2319 requires that the present value of a beneficial interest in an inter vivos trust established by a decedent must be charged against the surviving spouse's elective share of an augmented estate. The county court committed no reversible error in its determination

of the present value of Myers' interest in the trust. Therefore, we affirm the judgment of the county court.

AFFIRMED.

HENDRY, C.J., and MILLER-LERMAN, J., not participating.