No. 22836.

Jack William Emery and Sandra Emery *v.* Medal Building Corporation, a Colorado Corporation, Neil Medema, and Louis A. Gaz.

(436 P.2d 661)

Decided January 22, 1968.

516

CISNEROS & HUCKEBY, for plaintiffs in error.

No appearance for defendants in error.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

THIS writ of error presents a rather knotty problem and arises from the fact that a house was so constructed as to encroach about 2 feet on an adjoining lot. To aid in an understanding of the entire matter, there is set forth at right a diagram, not to scale, which when considered in connection with the balance of this opinion will hopefully bring the dispute into focus.

At the outset we would observe that our solution of the matter is made somewhat more difficult than would ordinarily be the case by the fact that: (a) there is no appearance in this Court by any of the three defendants in error; and (b) the record on error does not contain the reporter's transcript. But the matter must be determined, and we shall now do the best we can with what we have before us.

Jack and Sandra Emery, hereinafter referred to as the plaintiffs, filed a "Complaint for Injunction" against Medal Corporation, a Colorado corporation hereinafter referred to as the Corporation, and one Neil Medema, an officer of the Corporation. In the complaint the plaintiffs sought to restrain the Corporation from conveying any portion of lot 15 to any third person or persons, and in support of this request alleged as follows:

1. that they had entered into a contract with the Corporation for the purchase of lot 15, block 3, Ridgeview Hills South First Filing, located in Arapahoe county;

2. that pursuant to the aforementioned contract the Corporation constructed a new home on said lot 15, and

LOT 15, BLOCK 3

EMERY

TRACT "A"

MURPHY

Street

LOT 14, BLOCK 3

N ← → S

at the time of the filing of their complaint the plaintiffs — though they did not have a deed to lot 15 — were nevertheless then in occupancy of the premises; and

3. that plaintiffs were thereafter informed that the Corporation was about to convey a portion of said lot 15 to persons other than the plaintiffs, all of which was said to be in direct violation of the contract between the parties.

Simultaneously with the filing of the aforementioned complaint, the plaintiff sought and obtained an *ex parte* temporary restraining order against the Corporation and Medema, whereby the latter were for ten days restrained from conveying or purporting to convey any portion of lot 15 to any third person or persons.

Within a few days thereafter the Corporation and Medema filed a "Motion for Dissolution of Temporary Restraining Order and Increase of Security." In this pleading the two defendants alleged that it was the plaintiffs themselves who had refused to "consummate the purchase of said premises by refusing to accept a conveyance of said property [and] refusing to accept a return of their initial payment for said property." The defendants also stated that injunctive relief was unnecessary as the plaintiffs had an adequate remedy at law should they suffer damage as a result of any breach of contract on the part of defendants.

If it should be determined that a preliminary or permanent injunction should issue, the defendants in this same motion requested that plaintiffs be required to deposit with the trial court the sum of $30,000 as security. In this regard, the security deposited in connection with the temporary restraining order was in the nominal sum of $50.

While the aforesaid temporary restraining order was in force and effect, one Louis A. Gaz, a registered land surveyor, sought to intervene in the injuctive proceeding as a party defendant and he tendered a proposed answer to plaintiffs' Complaint for Injunction. The motion

to intervene was granted. In this motion, as well as in the answer thus filed by Gaz, the following allegations were made:

1. that Gaz, together with the Corporation, "laid out and prepared an improvement survey for the lot, hereinafter referred to as lot 14, which lies to the west of and immediately adjacent to lot 15";

2. that "through an error in determining the property pin which would represent the common North-South line of lot 14 and lot 15, the house constructed on lot 14 encroaches upon lot 15 approximately 2 feet, [and] said house is in violation of the side line set back requirements of the Arapahoe County Zoning Resolution";

3. that said lot 14, together with the house constructed thereon, was conveyed by the Corporation to a Mr. and Mrs. Murphy about one month prior to the filing of the motion to intervene;

4. that the "encroachment problem" was first discovered by all concerned only a few days before plaintiffs instituted their injunctive action;

5. that the Corporation has been attempting to "correct the problem" by negotiating with the plaintiffs in an effort to obtain their consent to the conveyance to the Murphys of a "pie shape portion of lot 15" (tract A on the diagram) which would satisfy the side line requirements as set forth in the Arapahoe County Zoning Resolution; but

6. that the plaintiffs have refused to thus negotiate and on the contrary instituted the present injunctive action.

It was on this general state of proceedings, then, that on the tenth day after the issuance of the *ex parte* temporary restraining order the matter then came on for hearing as to whether a preliminary or permanent restraining order should be granted the plaintiffs. As indicated above, the record before us does not contain the transcript of what transpired at this hearing. The record on error does indicate, however, that testimony

was indeed taken, but we are not favored with a transcription of such. There being no reporter's transcript in the record on error, we do not have before us the statements, if any, made by counsel at the hearing as to any evidentiary matters that were perchance stipulated and agreed to by them. This much we do know, though, that a hearing was held at the conclusion of which the trial court took the matter under advisement and permitted opposing counsel to file briefs.

Later on, but before the trial court ruled on the matter of a preliminary or permanent injunction, the Corporation and Medema filed an Answer and Petition for Relief. The answer generally denied the right of the plaintiffs to any injunctive relief, and the Petition for Relief asked that the trial court in the instant proceeding "determine and adjudicate the rights, duties, privileges, responsibilities and obligations of the parties hereto. . . ." In this pleading the Corporation and Medema also alluded to the "encroachment problem" mentioned in Gaz's answer and then went on to allege they were "willing and desire to make appropriate equitable ad-justments in the terms of the agreement in order to enable performance by the plaintiffs as well as the defendants; however, plaintiffs insist upon an impossibility and refuse to do equity."

The plaintiffs then filed their Answer to Petition for Relief wherein they indulged in a bit of invective, alleging that the "Petition for Relief" filed by the Corporation and Medema contained "false and misleading statements" and that the defendants were generally guilty of various and sundry "machinations and bad faith." It was in connection with this particular pleading that the plaintiffs tendered into court the sum of $22,173, which was apparently the balance due on the contract price, and then demanded that the Corporation give them a general warranty deed conveying lot 15 to them.

This was the general state of the pleadings when the trial court entered its order. Apparently the trial court

announced certain oral findings and conclusions from the bench, and then asked counsel to prepare formal written findings and conclusions for its consideration and approval. In any event, the trial court eventually did sign rather elaborate written findings of fact, conclusions of law and judgment. These several findings are deemed to be of considerable importance and hence are now to be set out in some detail.

The significant findings of fact made by the trial court may be summarized as follows:

1. that on or about June 8, 1966 the plaintiffs entered into a contract with the Corporation for the purchase of lot 15, and for the construction of a residential dwelling thereon;

2. that on or about June 11, 1966 the Corporation entered into a similar contract with James and Jewell Murphy for the sale and purchase of lot 14, which was situate immediately adjacent to lot 15, and for the construction of a residential dwelling thereon;

3. that the construction of these two homes proceeded more-or-less apace, with the home on lot 14, however, being completed first;

4. that upon the completion of their home the Murphys moved in and thereupon received a warranty deed from the Corporation covering lot 14;

5. that in setting out the residential dwelling on lot 14, an unintentional mistake was made in the location of the dwelling constructed thereon, with the result that the completed dwelling encroached approximately 2 feet upon lot 15 and that none of the parties to this litigation, nor the Murphys were aware of this encroachment until a date subsequent to the conveyance of lot 14 to the Murphys;

6. that the Corporation "intended to cure the encroachment" by conveying a portion of lot 15 to the Murphys;

7. that upon being apprised of this intention on the

part of the Corporation the plaintiffs obtained the afore-mentioned *ex parte* restraining order;

8. that restrictive covenants require that all homes constructed in a sub-division have a 10 foot side line set back; and

9. that notwithstanding the encroachment and the fact that a temporary restraining order had issued, the plaintiffs and the Corporation held a so-called "closing," at which time the Corporation tendered to the plaintiffs a deed to lot 15 "without exception," but that plaintiffs' lending agency then refused to advance plaintiffs the purchase money on the ground that the aforesaid encroachment "rendered the title to the property unmerchantable."

In its findings the trial court stated that all of the findings which have just been summarized were stipulated to by the parties. Additional findings, which were apparently *not* stipulated to, are as follows:

1. that the Murphys are unwilling to accept just the surface area of lot 15 on which there is actual encroachment, but want a larger surface area, triangular in shape, so as to comply with applicable building restrictions relating to side line set back;

2. that the plaintiffs, if they must relinquish any portion of lot 15, prefer to relinquish only the actual encroachment area; and

3. that the plaintiffs "have elected to affirm the contract for sale and purchase of the property."

Based on the findings and conclusions which are summarized above, the trial court ordered, adjudged and declared as follows:

1. denied plaintiffs' request for a preliminary and permanent injunction and dissolved the temporary restraining order;

2. decreed that the plaintiffs "are entitled to rescission and damages, if any have resulted from the defendants' acts, and if plaintiffs desire to rescind and have their

damages determined, they shall so elect and advise the court within ten days from the date of this order"; ·

3. that if the plaintiffs do not so elect to rescind within the ten day period then the Corporation shall convey a described portion (believed to be tract A on the diagram) of lot 15 to the Murphys; and

4. ordered that the Corporation shall then convey to the plaintiffs lot 15, less the portion thereof conveyed to the Murphys, and the plaintiffs shall thereupon pay the Corporation "the balance of the purchase price."

By writ of error the plaintiffs now seek reversal of the judgment thus entered by the trial court, and in connection therewith ask that we now direct the trial court to grant the injunctive relief which they have sought, namely an order that the Corporation be permanently enjoined from conveying any portion of lot 15 to the Murphys, or any other third person or persons.

As indicated at the outset of this ·opinion, we are of the firm view that in resolving this controversy the Court is laboring under a handicap not normally present in the typical writ of error. In the first place, there has been no appearance for any of the defendants in error. This certainly places an undue burden on the Court. Secondly, the record of error contains no reporter's transcript. There being at least some facts in dispute, the absence of a reporter's transcript in such situation ordinarily would result in an affirmation of the judgment entered by the trial court in its entirety. See *Marcotte v. Olin Mathieson Chemical Corporation,* 162 Colo. 131, 425 P.2d 37.

However, in the instant case the plaintiffs are spared this speedy and unfavorable disposition of the matter, only because the trial court apparently based its ultimate disposition of the matter on what it said were "stipulated facts." And in this connection we must accept the declaration of the trial court that certain facts were stipulated by the parties, though the record itself contains no such stipulation. No doubt it was for

this very reason that the plaintiffs elected not to include the reporter's transcript as a part of the record on error. So, instead of resolving this controversy on any procedural ground, we must resolve the writ of error on its merits.

In 49 Am. Jur. at pages 119 and 120 appears the following statement as to the rights of a vendee where the vendor is unable to deliver all that he promised to deliver in the contract for the purchase and sale of realty:

"The vendee in a land contract is entitled to a good marketable title and to the full amount of the land which he contracted to buy, and will not be compelled by the vendor to accept anything substantially less, even with abatement of the purchase price. *Neither will equity decree specific performance against the vendor when performance is impossible.* Where, however, notwithstanding the vendor is unable to convey the full title or the full amount of property which he contracted to sell, the vendee elects to take that which the vendor has, the court will not permit the vendor to object that he does not have the whole estate, but will compel him, if the vendee so chooses, to execute so much of the contract as he is able, generally allowing the vendee to have an abatement of the purchase price sufficient to compensate him for the defect in title or deficiency in quantity. It is a well-recognized principle of equity that a vendee, in an action brought by him for specific performance of a contract, may waive the performance on the part of the vendor of portions of his contract, and may elect to take a partial performance, if he himself is willing to perform fully. Especially where the vendee is willing to take the vendor's defective title without asking for an abatement in the purchase price will the vendor be prohibited from setting up his defective title or insufficient estate as a defense to an action for the specific performance of his contract. If the vendor has any interest in the property he has contracted to convey,

the vendee at his option, may enforce the contract with respect to whatever interest the vendor possesses, notwithstanding the vendor, because of his own default, could not have enforced specific performance against the vendee.

"The vendor is not permitted to defend an action for specific performance upon the ground that his title is not so complete as the one which he agreed to convey. Since the vendor is estopped from asserting his inability to perform, a vendee may have specific performance of an agreement to sell land to the extent that the grantor is able to transfer title and comply with this agreement of sale." (Emphasis added.)

Colorado would appear to be in general accord with the foregoing statement. See *Murdock v. Pope,* 156 Colo. 7, 396 P.2d 841; *Kuper v. Scroggins,* 127 Colo. 416, 257 P.2d 412, and *Rule v. Link,* 84 Colo. 82, 267 P.2d 1005.

In our analysis of the situation it is at once obvious that because of the encroachment problem the Corporation cannot convey to the plaintiffs by a general warranty deed fee simple title to *all* of lot 15. Such then being the situation, the trial court did not err in its refusal to grant the request of the plaintiffs in their Answer to Petition for Relief that the Corporation give them a general warranty deed conveying lot 15, and all of it to the plaintiffs. Though the general rule may well be that specific performance of a contract for the sale of land will be granted even though the vendee might be fully compensated in damages for any injury resulting from a failure of the vendor to convey, specific performance is never a matter of right and whether in a given case specific performance should be afforded depends upon "the circumstances of the particular case, under well-recognized rules of equity jurisprudence." *De Feo v. Smith,* 119 Colo 296, 203 P.2d 485 and *White v. Greenamyre,* 77 Colo. 33, 234 P. 164.

And as a corollary of the foregoing, the trial court did not err in denying plaintiffs' request that the

528

Corporation be restrained from conveying any portion of lot 15 to the Murphys. The trial court was possessed of equitable powers and in a rather difficult factual situation it was attempting to fashion a remedy which would be fair to all. In the main we approve of the remedy thus fashioned by the trial court, though certain portions of the judgment, which will be referred to below, are inequitable and cannot be permitted to stand.

Specifically, we perceive no error in that part of the judgment of the trial court which permitted the Corporation to convey to the Murphys a certain described portion of lot 15. As we understand it, the portion of lot 15 which is to be conveyed to the Murphys is depicted on the aforesaid diagram as Tract A and constitutes the tract necessary to bring the Murphy home into conformity with the set back. To simply permit the conveyance to the Murphys of only that portion of lot 15 upon which the Murphys' house is actually resting would not be just or fair. Rather, under the particular circumstances of this case the Murphys should receive such portion of lot 15 as is necessary to make theirs a *lawful* use, as concerns lateral set back, of the plot upon which their house is situated. This is particularly so, as we see it, where the proposed *new* boundary line between lots 14 and 15 will be so located that the Murphy house will then be the required 10 feet back of the lateral property line, and at the same time the plaintiffs' house at its closest point will be 13½ feet back from the *new* property line. So, we perceive no error in that part of the judgment which permits the Corporation to convey to the Murphys such portion of lot 15, and no more, as is necessary to enable the Murphys to make *lawful* use of lot 14.

All of this, of course, does not mean that the plaintiffs are compelled to take something less than that which they bargained for. They have an election to make, if such has not already been made by them. On the one hand, they may elect to rescind their contract

with the Corporation. Indeed the contract itself makes provision for the situation where the Corporation is unable to deliver a merchantable title.

On the other hand, plaintiffs may elect to accept partial performance by the Corporation, in which event there should be an abatement of the purchase price provided for in the contract in an amount "equal to the value of the deficiency or defect." See *Kuper v. Scroggins, supra.* Hence, the trial court erred in that part of its judgment which decreed that if the plaintiffs did not elect to rescind, and thereafter the Corporation conveyed to the plaintiffs all of lot 15 except the portion to be conveyed to the Murphys, that the plaintiffs should then pay the Corporation the *entire balance* of the purchase price provided for in the contract between the parties.

The judgment insofar as it denies the plaintiffs' request for a preliminary or permanent injunction and permits the Corporation to convey to the Murphys such portion only of lot 15 as is necessary to enable the Murphys to make theirs a lawful use of lot 14 is affirmed. The balance of the judgment is reversed and the cause remanded with direction that the trial court permit the parties to amend their pleadings, if they be so inclined, with further proceedings to be consonant with the views herein expressed.