19749

Bill COX, Respondent, v. Ethel Mae COX et al., Respondents, and Danny Cox and Wanda Cox, now known as Wanda Grainger, minors, Appellants.

(202 S. E. (2d) 6)

*Sidney T. Floyd, Esq.,* of Conway, *for Appellants,*

*Messrs. Stevens & Holt,* of Loris, *and J. Stanton Cross, Jr.,* of Conway, for Respondents,

January 8, 1974.

LEWIS, Justice:

This action was brought to partition a tract of land in Horry County, owned by the late W. C. Cox. Admittedly, partition could be properly effected only through sale and the lower court so ordered. The basic issues in the cause involved the right of adopted children to inherit from their natural parent and the proper disposition of a life estate in the property. With reference to these, the lower court held that (1) adopted children could not inherit from their natural parents; (2) that the value of the life estate be determined in accordance with acturial tables established by the United States Treasury Department for estate and gift tax purposes; and (3) that the value of the life estate, so determined, be paid to the life tenant out of the proceeds of sale. The issues in this appeal involve the foregoing rulings.

W. C. Cox died on November 14, 1964, leaving a will executed on December 12, 1957, in which he devised the land involved in this litigation to his wife, for life, with remainder to his named children. On September 25, 1963, prior to testator's death, one of his sons, Blanchard Cox, a devisee under his will, died intestate leaving, as his sole heirs at law, two children, still minors, one of whom (defendant Danny Cox) was adopted on June 1, 1964 by the testator and his wife (the child's grandparents), and the other (defendant Wanda Grainger) by an aunt and her husband.

Therefore, the testator left surviving an adopted child, in addition to his natural children.

On July 9, 1967, subsequent to the death of the testator, another son died intestate, leaving as his sole heirs his wife, the defendant Ethel Mae Cox, and two children, the minor defendants Kenneth and Gail Cox.

On December 8, 1972, testator's widow and his natural children conveyed all of their interests in the subject land to the plaintiff Bill Cox, so that he and the defendants are the only parties who claim any interest therein.

The first question concerns the right of adopted children to inherit from their natural parent.

The children of testator's predeceased son would ordinarily inherit the share of the estate devised to their father. Section 19-237, 1962 Code of Laws. They were, however, adopted prior to the testator's death and neither would be entitled to the share of their father, unless an adopted child can inherit from his natural parent. The lower court held that the adopted child of the testator would share, as an after-born child, equally with testator's natural children in the distribution of the proceeds from the sale of the land (Section 19-236, 1962 Code of Laws; *Fishburne v. Fishburne,* 171 S. C. 408, 172 S. E. 426) ; but that the legal adoption of the children barred their right to inherit from their natural father. One effect of this ruling is that the grandchild who was adopted by the aunt would not share in the grandfather's estate.

The claimed right of the adopted children to inherit from their natural parent is asserted, in effect, under Section 19-237, which provides:

"If any child die in the lifetime of the father or mother, leaving issue, any legacy of personalty or devise of real estate given in the last will of such father or mother shall go to such issue, unless such deceased child was equally portioned with the other children by the father or mother."

These grandchildren, of course, would normally constitute *issue* within the meaning of the foregoing statute and would inherit the share of the testator's estate which their father would have inherited had he lived, unless they are no longer *issue* because of their adoption. The question here, then, is not whether the adopted child is brought within the term *issue,* but whether a natural child, and therefore *issue,* is excluded from the term because of adoption.

The quoted statute does not attempt to define the right of an adopted child to inherit and it and the adoption statutes must be construed together for the purpose of determining whether the effect of the adoption statutes is such as to exclude the grandchild from the designation of *issue.* 2 Am. Jur. (2d), Adoption, Section 100.

It is generally held that, since adoption is entirely statutory, *Driggers v. Jolley,* 219 S. C. 31, 64 S. E. distribution, and the right of a child to inherit from his natural parents is one of statutory construction. Annotation: 37 A. L. R. (2d) 333; 2 Am. Jur. (2d), Adoption, Section 103, 2 C. J. S. Adoption of Persons § 150. The rule is thus stated in the American Jurisprudence citation:

"Consanguinity is fundamental in statutes of descent and distribution and the right of a child to inherit from his natural parents or to share in the intestate personalty of their estates is affected by the legal adoption of the child by another only to the extent that such rights are taken away or limited by the terms of the applicable statutes of adoption and descent and distribution, or by necessary implication therefrom."

Therefore, whether or not an adopted child can inherit from his natural parent must be determined from our pertinent adoption statutes which are found in Section 10-2587.13, Supplement to the 1962 Code of Laws. This statute was adopted prior to the death of the testator and prior to the adoption decree and controls the rights of the present

parties. 2 Am. Jur. (2d), Adoption, Section 109. The applicable portions of Section 10-2587.13 are as follows:

"Effect of final decree.— (a) After the final decree of adoption is entered, the relation of parent and child and all the rights, duties, and other legal consequences of the natural relation of child and parent shall thereafter exist between such adopted child and the person adopting such child and the kindred of the adoptive parents. From the date the final decree of adoption is entered, the adopted child shall be considered a natural child of the adopting parents for all inheritance purposes, both by and from such child, to the exclusion of the natural or blood parents or kin of such child.

.   .   .

(b)   After a final decree of adoption is entered, the natural parents of the adopted child, unless they are adoptive parents, shall be relieved of all parental responsibilities for the child and have no rights over such adopted child."

We are convinced that, under the above section a final decree of adoption completely severs all ties between the adopted child and the natural parents and effectively bars any right of the child to inherit from them. The statute provides that the final decree of adoption establishes the relation of parent and child with "all the rights, duties and other legal consequences of the natural relation of child and parent." The legislative intent to completely terminate all relationship between the adopted child and the natural parent is conclusively shown by the provision that, from the date of the final decree, "the adopted child shall be considered a *natural child* of the adopting parents *for all inheritance purposes,* both by and from such child, *to the exclusion of the natural or blood parents or kin of* such child." (Emphasis added.)

The statute ends an adopted child's legal relationship with its natural parents and it becomes the child of the adopting parents for all inheritance purposes, as

fully as if born to them in lawful wedlock, "to the exclusion of the natural or blood parents." As such children of the adopting parents, the grandchildren here were no longer issue with the meaning of Section 19-237, *supra*, and could not inherit from the natural parents. The lower court correctly so held.

The remaining questions concern the provisions of the order of the lower court relative to the disposition of the life estate.

The testator's widow conveyed her life estate in the property to plaintiff on December 8, 1972, at which time she was 71 years of age, reaching 72 on June 2, 1973. As previously stated, the lower court ordered the land sold for division; and that the value of the life estate be determined and paid out of the proceeds of sale to plaintiff, the present owner of such estate. The value of the life estate was to be determined by applying the then life expectancy of the life tenant to the actuarial tables established by the United States Treasury Department for estate and gift tax purposes.

No adult owner of an interest in the land has filed any objection to the foregoing disposition of the life estate and the order of the lower court is, for that reason, binding on them. *South Carolina Savings Bank v. Stansell,* 160 S. C. 81, 158 S. E. 131. This phase of the order of the lower court is therefore reviewed only as it affects the rights of the minors involved.

While the question is not raised by any exception, we must, under this record, first determine whether the lower court had the authority to order the value of the life estate paid to the life tenant, in so far as the interests of the minors are concerned. We reach this question in the discharge of the court's duty to determine whether the interests of the minors have been properly protected. *Caughman v. Caughman,* 247 S. C. 104, 146 S. E. (2d) 93.

The right of the owner of the life estate to demand ■ partition against the remaindermen and to take the value of the life estate in money was discussed in *South Carolina Savings Bank v. Stansell, supra,* 160 S. C. 81, 158 S. E. 131. That decision controls the disposition of the present question. The court there held:

"With respect to the disposition of the proceeds of a partition sale of property incumbered by a life estate, the approved rule is that, in the absence of a statute otherwise providing, the owner of the life estate is not entitled to have the present value of such estate paid him, but only the income from the proceeds during the continuance of such estate. In other words, he is entitled to the use only of the property, whether lands or money, and not to any portion of the *corpus.* Where the property is sold for partition, the proceeds should therefore be invested for the benefit of the owner of the life estate and the income paid him until the falling in of such estate, upon which event the proceeds should be disbursed among those entitled thereto."

The court examined our statute (then Section 5292, now Section 10-2201) and concluded that it did not change the foregoing principles.

However, the court, in *Stansell,* recognized, under certain conditions, partition between the life tenant and remaindermen might be effected, quoting, with approval, from 20 R. C. L., p. 747 (now found in 59 Am. Jur. (2d), Partition, Section 170, p. 901);

"Of course partition may be made by suit where all the parties consent, although some of them might, from the nature of their estate, resist with success; therefore if a life tenant consents to a partition or sale of the property by remaindermen and to take the value of his life estate in money, and if it appears to the court that it will not be to the prejudice of the other parties in interest, a partition and sale may be had."

In *Stansell,* as in this case, an action for partition was brought by one, who was a tenant in common of the fee and

the owner of a life estate in the entire property, against the other remaindermen, some of whom were minors. Upon evidence that the property had so deteriorated until the value of both life estate and remainder interests were seriously threatened and with the consent of all parties, including the guardian *ad litem* for the minors, the lower court ordered the property sold for partition and the proceeds of sale distributed among the owners, including the payment to the life tenant of the value of the life estate. Although the guardian *ad litem* for the minors had consented to the judgment, the court, on appeal considered the question of whether the payment of the life tenant of the value of the estate was in the best interest of the minors. Agreeing that it would be to the best interests of the minors, the consent of the guardian *ad litem* to the payment to the life tenant of the present cash value of the life estate was approved. The decision of the court to permit the life estate to be disposed of was clearly based upon the finding that such was for the best interest of the minors. The approval of the court was thus stated:

"Accordingly, while adhering to the announced rule as to the investment of the proceeds and the payment to the holder of the life estate of the income therefrom, etc., this court will not interfere, under the facts of this case, with the disposition made of the life estate."

Therefore, in the absence of facts showing that the best interests of the minors would be served by disposing of the life estate, the cash value thereof cannot be paid to the life tenant out of the interests of the minors; but, the entire interests in which the minors are remaindermen must be invested and the income paid to the owner of the life estate until the falling in of such estate, upon which event the proceeds will be disbursed among those entitled thereto.

The record in this case is totally devoid of any showing that the disposal of the life estate would serve the best interests of the minors and the lower court has made no finding in that regard. The lower court was therefore in error

in directing that the value of the life estate in the interests of the minors be commuted and paid to the life tenant.

The result of this decision is that the value of the remainder interest of the defendant, Ethel Mae Cox, the only adult owner of an interest in the lands other than plaintiff, will be calculated in accordance with the provisions of the order of the lower court, since she has interposed no objection thereto. There, however, will be no commutation of the value of the life estate with regard to the shares in which the minors own remainder interests, but such shares shall be invested, with proper safeguards for the preservation of the *corpus*, with the income payable to the owner of the life estate until the falling in of such estate and then to be paid to those entitled thereto.

The agreement of the adults to the disposition of the life estate in accordance with the order of the lower court and the denial herein of the right of commutation of the life estate in the interests of the minors renders it unnecessary to consider other issues raised.

The judgment of the lower court is accordingly affirmed as modified; and remanded for further proceedings in accordance with this decision.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.