**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, as the successor to National City Bank of Denver, a national banking association, Plaintiff–Appellee,**

v.

**Thomas Z. MARS, Defendant–Appellant.**

**No. 89CA0097.**

Colorado Court of Appeals,
Div. I.

April 11, 1991.

Rehearing Denied May 30, 1991.

Certiorari Denied Dec. 23, 1991.

Holt & Associates, P.C., L. Tyrone Holt, Kevin J. O'Toole, for plaintiff-appellee.

Gary S. Cohen, Denver, for defendant-appellant.

Opinion by Judge CRISWELL.

Defendant, Thomas Z. Mars, appeals the decree of the trial court that quieted title in plaintiff, National City Bank (the bank), to several buildings presently located on property owned by defendant. Defendant contends that he owns the disputed buildings and that the court erroneously rejected his slander of title claim premised on the filing by the bank of a lis pendens respecting the property. He also argues that the trial court erred by dismissing his claim for damages for past due lease payments and by striking his demand for a jury trial. Finally, he asserts that the trial court erred by ordering the sale of his property. We affirm the court's judgment quieting title and dismissing defendant's counterclaims, but we reverse its order directing the sale of the property.

Until 1985, defendant was the sole shareholder in Mars Steel Co., a corporation previously established by him. During that period, defendant acquired in his own name certain real property upon which various buildings had been erected. Commencing in 1982, however, defendant treated Mars Steel as the owner of the buildings, while he continued to act as the owner of the underlying land. While defendant asserts that this title severance was for tax purposes only, the trial court found that the severance was complete in 1982 and that Mars Steel became the owner of the buildings at that time. From 1982 until 1985, Mars Steel paid ground rent to defendant for the use of the land, and it took an income tax deduction for depreciation attributable to the buildings.

In 1985, defendant sold all of his stock in Mars Steel to a group of investors (the buyers) to whom the bank made a loan to finance the purchase of the stock. At that time, defendant entered into a ten-year written lease with Mars Steel, which also granted to Mars Steel an option to purchase. Whether this lease covered only the land or both the land and the buildings was disputed in the trial court.

In September 1986, Mars Steel ceased operations and abandoned both the land and the buildings in question. Defendant then re-entered and took possession of the property in accord with provisions of the written lease, but he did not terminate that lease. In order to mitigate his loss, defendant leased all of the property to another party. Three days later, the buyers and the successors in title to Mars Steel quitclaimed to the bank all their right, title, and interest in the property.

The bank then brought this quiet title action to determine its interest in the buildings, and in connection therewith, it filed a lis pendens covering the property. Defendant counterclaimed, asserting that he held title to the buildings. He also claimed that the bank was liable to him for payments due under the written lease with Mars Steel and for damages resulting from the bank's filing of the lis pendens. Pursuant to C.R.C.P. 38(a), defendant demanded a jury trial on his damage claims.

Both parties filed motions for summary judgment, and the bank moved to strike defendant's jury demand. The trial court dismissed defendant's claim for damages for past due payments under the lease and, thereafter, concluded that the remaining issues were equitable in nature. Therefore, it struck defendant's jury demand.

After a bench trial on the bank's quiet title claim and on defendant's counterclaim for damages resulting from the filing of the lis pendens, the court held that the buildings belonged to Mars Steel at the time of defendant's sale of that company's stock and that the later quitclaim deeds served to transfer title thereto to the bank. In view of this ruling, the court dismissed defendant's counterclaim based on the filing of the lis pendens.

In considering further possible judicial relief, the trial court noted that it could order the buildings to be severed from the

land and removed. It concluded, however, that this remedy would not be satisfactory because the net worth of the buildings, severed from the land, would be very little. Therefore, the court ordered the parties to attempt to agree upon the value of the buildings, after which defendant would be allowed either to purchase or to lease the buildings.

However, defendant declined either to buy or to lease the buildings. The court thereupon found that "[d]efendant Mars has chosen not to cooperate with [the bank], despite this court's order. The court will not allow waste by directing that the buildings be removed. This would be ludicrous and counter to the benefit of all." Instead, the court directed that both the land and buildings be sold and that, upon sale of all of the property, the bank first would be paid the appraised value of the buildings and, thereafter, all remaining proceeds would be paid to defendant.

### I.

Defendant first argues that the trial court erred by granting summary judgment on his claim against the bank for payments which were past due on the lease between defendant and Mars Steel. We disagree.

■ For contractual obligations between a lessor and lessee to pass to a successor in title of the lessee, there must be either privity of contract or privity of estate between the lessor and that successor in title. Similarly, for the assumption of liability under a lease by a sublessee or assignee to be enforceable by the original lessor, that assumption must be expressed to him, and not merely to the lessee or assignor. *Bonfils v. McDonald,* 84 Colo. 325, 270 P. 650 (1928).

■ If there is no independent contractual relationship between an assignee of a lessee and the lessor, liability for breach of the covenants of the original lease is governed by the law of privity of estate, not the law of contracts. Under that law, the assignee is bound to perform the covenants of the lease only so long as he is in posses-

sion of the premises. If he surrenders possession, the privity of estate will be destroyed, and there will be no basis for further liability to the lessor. *Bonfils, supra; J.E. Martin, Inc. v. Interstate 8th Street,* 41 Colo.App. 203, 585 P.2d 299 (1978).

■ Here, there is no evidence that the bank expressly agreed with defendant that it was assuming the obligation of the lease with Mars Steel. Thus, there was no independent privity of contract between defendant and the bank. And, when the bank received title to the buildings, it did not, by reason of that fact alone, assume any liability under that lease.

Further, when defendant retook possession of the premises, the bank had no title to, nor any interest in, the buildings; it did not receive its title to the buildings until three days after defendant retook possession of the premises. Hence, there was no privity of estate between the bank and defendant at that time.

In summary, then, the bank was not liable for rental payments under the written lease by reason of the law of contracts, because it did not assume the written lease. And, it was not liable for those payments as a result of any privity of estate because it never entered into possession of the buildings. Thus, the trial court properly held that the bank was not liable for the rental payments called for by the written lease.

However, it should be noted that, because the bank refused to assume the obligations under the lease and because the record discloses that there was no other means by which the defendant gave his consent to the continued occupation of his land by the bank's buildings, such continued occupation constituted a continuing trespass. In appropriate proceedings the defendant would be entitled to judicial relief for such trespass. *See generally* Restatement (Second) of Torts § 160 (1965) (after consent withdrawn, structures must be removed within reasonable time; continued occupation of land by structures is trespass). *See also Fulton Investment*

*Co. v. Farmers' Reservoir & Irrigation Co.*, 76 Colo. 472, 231 P. 61 (1925).

## II.

Defendant next argues that the court erred by denying his right to a trial by jury. He does not dispute that the bank's quiet title action is equitable in nature and that there is no right to a jury trial for an action in equity. Rather, he contends that he had a right to a jury trial because the issue presented by the bank's pleadings was whether the buildings were real property or trade fixtures. He argues that, if title to the buildings had been severed, then the buildings automatically became trade fixtures, and thus, being trade fixtures, they are personal property. Accordingly, he asserts that, because the proper action for recovery of personal property is not a quiet title action, but an action in replevin, he is entitled to a jury trial under C.R.C.P. 38(a). Again, we disagree.

■ In determining whether an action should be tried to a jury, it is the original complaint which fixes the nature of the suit. *Miller v. District Court*, 154 Colo. 125, 388 P.2d 763 (1964); *Miller v. Carnation Co.*, 33 Colo.App. 62, 516 P.2d 661 (1973). And, the assertion of a counterclaim for legal relief in a predominantly equitable proceeding does not change the nature of the action. *In re Marriage of Rosenberg*, 690 P.2d 1293 (Colo.App.1984).

■ Thus, even if the trial court had not dismissed his counterclaim for damages, defendant would still not have been entitled to a jury trial on those claims. It is not the nature of the issues of fact to be tried which determines whether there is a right to a jury, but the character of the action in which they are presented. *Maddalone v. C.D.C., Inc.*, 765 P.2d 1047 (Colo. App.1988). If the relief sought is equitable in nature, there is no right to a jury trial. *Continental Title Co. v. District Court*, 645 P.2d 1310 (Colo.1982).

■ Here, the bank brought an action pursuant to C.R.C.P. 105(a), which provides that a party may obtain a complete adjudication of the rights of all parties with respect to any real property and for damages, if any, for the withholding of possession. Thus, the nature of the action is one sounding in equity. Defendant, therefore, had no right to a jury trial of the issues presented.

## III.

■ Defendant also argues that the court erred in finding that the bank held title to the buildings. We conclude, however, that this finding is factually supported.

The trial court specifically found that a complete severance of the title to the buildings from the title to the land was accomplished by the 1982 conveyance from defendant to Mars Steel. It concluded, therefore, that Mars Steel held title to the buildings prior to the sale of the company's stock in 1985 and that the bank later had this interest conveyed to it. The court likewise held that the written lease covered only the land, not the buildings. Therefore, because defendant did not own the buildings, his repossession of the land for non-payment under the lease had no effect upon the title to the buildings.

These findings are supported by the evidence. The buildings were listed as assets of Mars Steel on that company's audited financial statements. Further, in financial statements attached to the sales contract with the buyers in 1985, the buildings were also listed as assets of Mars Steel, and there was a general warranty clause in the sales contract which guaranteed that the assets listed were owned free and clear by that company. Finally, there was the testimony from the bank's chief executive officer that it was her understanding of the stock sale transaction that the buildings were part of the assets of Mars Steel.

Thus, because the court's findings are supported by the record, they are binding on appeal. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

## IV.

Defendant next challenges the trial court's finding as to the ownership of a

metal craneway on the premises. However, in view of our approval of the trial court's ruling that the bank owns the buildings, defendant has no interest in this issue. He does not have title to the buildings, which are owned by the bank, nor does he have any interest in the crane, which is concededly owned by a third party, Midwest Steel, Inc. Therefore, defendant was not prejudiced in any way by the court's determination of this issue, and he has no basis to assert any claims regarding it.

However, because Midwest Steel, Inc. is not a party to this litigation, we express no opinion as to whether the trial court's judgment upon this issue is binding on it.

### V.

Finally, defendant argues that the trial court abused its discretion in ordering the sale of his land. With this assertion we agree.

■ Normally, if co-tenants have a common interest in real or personal property, either party may have the property divided pursuant to the partition statute, § 38–28–101, et seq. C.R.S. (1982 Repl.Vol. 16A). Under § 38–28–107, C.R.S. (1982 Repl.Vol. 16A), if the court finds that partition of the property "cannot be made without manifest prejudice to the rights of any interested party, the court may direct the sale of such property at public sale upon such terms as the court may fix."

Here, however, the bank holds no interest in the underlying land, and defendant owns no interest in the buildings. They own no interest in common. Thus, the court order directing the sale of the property cannot rest upon § 38–28–107.

As its rationale for ordering the sale of defendant's property, the trial court concluded that partition would "constitute a waste." On this basis, the bank argues that the order to sell defendant's property was within the equitable power of the court to prevent economic "waste."

However, while severance of the buildings from the land may be economically wasteful, it does not constitute legal waste.

At common law, "waste" referred to any unauthorized destruction or severance of improvements, trees, minerals, or other corporeal hereditaments on or from the land belonging to another by one who did not have title, but who was rightfully in possession. *Wingard v. Lee*, 287 S.C. 57, 336 S.E.2d 498 (S.C.App.1985); *Oldham v. Keaton*, 597 S.W.2d 938 (Tex.Civ.App. 1980).

■ This concept has evolved and broadened into a legal means by which any concurrent non-possessory holders of an interest in land are enabled to prevent or restrain harm to land committed by persons in possession. *Smith v. Cap Concrete*, 133 Cal.App.3d 769, 184 Cal.Rptr. 308 (1982). However, the existence of a vested interest in the property, such as a remainder or a reversion, is a vital prerequisite to maintenance of an action for waste. *Saxon v. Johnson*, 393 So.2d 1007 (Ala.Civ.App.1980).

■ Here, both parties hold separate concurrent estates. Neither the bank nor defendant Mars has any reversionary or remainder interest in the estate of the other. Therefore, the court's order cannot be looked upon as one designed to prevent waste.

■ The bank argues, however, that a court of equity has considerable discretion in fashioning a decree that achieves a fair result under the particular circumstances of the case. We agree. *See People v. Garner*, 732 P.2d 1194 (Colo.1987) (equitable order for abatement of forfeiture provisions of Colorado public nuisance statute); *Dlug v. Wooldridge*, 189 Colo. 164, 538 P.2d 883 (1975) (rescission of land sales contract for mutual mistake); *Emery v. Medal Building Corp.*, 164 Colo. 515, 436 P.2d 661 (1968) (refusal to grant request for a decree of specific performance by buyer in a land sale contract); *McFadzean v. Lohr*, 152 Colo. 31, 380 P.2d 20 (1963) (water court sitting as court of equity may direct those steps necessary to make decree effective); *Rice v. Hilty*, 38 Colo.App. 338, 559 P.2d 725 (1976) (rescission of land sale contract for fraud).

Nevertheless, we have found no authority from any jurisdiction for the proposition that a court sitting in equity may order the sale of land in a case such as this, where the present possessory owner has undisputed fee title, in order to benefit one who holds no interest in the land, either present or prospective.

A central concept of equity jurisprudence is that, if the defendant has violated the plaintiff's substantive rights, and there is no adequate remedy at law, equity may then intervene to fashion a remedy. *See Gillette v. Pepper Tank Co.*, 694 P.2d 369 (Colo.App.1984). This has been expressed in the equitable maxim that: "There can be no wrong without a remedy." *See Maley v. Heichemer*, 81 Colo. 379, 256 P. 4 (1927).

Here, however, the record discloses no "wrong" by the defendant for equity to remedy. The underlying rationale for the trial court's ruling seems to have been that defendant acted unreasonably in refusing to cooperate with the bank in either purchasing or leasing the buildings from it and that the bank would suffer an economic hardship if forced to remove the buildings from defendant's land. However, when the bank took title to the buildings by the quitclaim deeds, without assuming the obligations of the written lease, it knew that it was gaining no possessory interest in the underlying ground. The bank has never questioned that defendant owned the land, and the court made no finding that the bank relied to its detriment on any false or mistaken representations by defendant, or that any fraud, misrepresentation, or other misconduct by defendant created the current situation.

While severance of the buildings from the land may not make sense from an economic standpoint, since both parties will suffer economic loss thereby, there is no legal requirement that defendant must lease or buy the buildings from the bank, nor any requirement that he engage in an involuntary sale of his land, merely to assure that the bank will recover its investment.

Accordingly, the order of the trial court that the property be placed for judicial sale cannot stand. Further, because defendant has not requested relief from the bank's trespass upon his property, either by counterclaim or otherwise, there is no basis for any order other than the decree quieting title to the buildings in the bank and the judgment dismissing defendant's pleaded counterclaims. Any other relief must be sought in other proceedings under appropriate pleadings.

The judgment quieting title to the buildings in the bank and dismissing defendant's counterclaims is affirmed. The order of the trial court requiring a sale of the land and buildings is reversed.

PIERCE and DUBOFSKY, JJ., concur.