Mary L. BEACH, Plaintiff–Appellant,

v.

Karen K. BEACH, Defendant–Appellee.

No. 01CA0384.

Colorado Court of Appeals,
Div. III.

Jan. 31, 2002.

Certiorari Granted Nov. 4, 2002.

Hanes & Schutz, P.C., Richard W. Hanes, Timothy J. Schutz, Colorado Springs, CO, for Plaintiff–Appellant.

Michael J. Frederick, Colorado Springs, CO, Defendant–Appellee.

Opinion by Judge ROTHENBERG.

Plaintiff, Mary L. Beach, appeals the trial court's judgment following a bench trial in favor of defendant, Karen K. Beach. We reverse and remand for further proceedings.

## I. Background

Karen K. Beach (the daughter) is the daughter of Mary L. Beach (the mother) and Ralph W. Beach (the father). In 1993, the father's health had severely deteriorated, and the daughter offered her parents the option of moving to her twenty-acre parcel in El Paso County. The parents orally agreed with the daughter to build an addition to her house at no expense to her so the mother and father could live there for the rest of their lives.

After the father died, the living arrangement between the mother and daughter became strained and eventually culminated in the filing of this lawsuit by the mother against the daughter. The mother sought partition of the addition and also alleged conversion of her personal property. In her answer, the daughter denied the mother had an interest in the property and filed a counterclaim to quiet title.

In the trial management order entered, both parties requested that if the trial court found the daughter had a right to partition, it place a value on the entire property and on the mother's interest in the addition, and then give the daughter an opportunity to purchase the mother's interest. If the daughter did not elect to do so and physical partition was not feasible, the parties asked that the trial court order the property to be sold and that the proceeds be divided based on their respective interests.

After hearing the evidence at trial, the court found the parties had entered into an oral contract that created a life estate in the mother and a remainder interest in the daughter. It also found for the mother on her claim of conversion of personal property and awarded nominal damages.

However, the trial court rejected the mother's claim for partition, concluding she had impliedly waived her right to partition the property because her life estate was limited. After concluding the mother was not entitled to partition, the court "as guidance" to the parties determined the present value of the mother's property interest at $48,000 based on expert testimony that the value of the entire twenty-acre parcel, which includes the addition, was approximately $250,000, and that the value of the addition built by the parents was between $49,500 and $100,000.

## II. Partition of the Life Estate

The mother first contends the trial court erred in refusing to partition her life estate interest in the addition. We agree.

## A.

Initially, we address and reject the daughter's contention that the mother is precluded as a matter of law from bringing this action to partition her life estate interest in the addition. This issue requires the interpretation of a statute and is therefore a question of law that we review de novo. *City of Colorado Springs v. Conners*, 993 P.2d 1167 (Colo.2000).

■ Historically, life estates were not subject to partition from the remainder interest. 2 *Thompson on Real Property* § 19.05 (D. Thomas 2d ed. 1998). The right to partition is usually only held by co-tenants. *Federal Deposit Insurance Corp. v. Mars*, 821 P.2d 826 (Colo.App.1991). However, statutes may alter this rule and permit a life tenant to partition his or her interest with the remainderman. *See generally* 59A Am.Jur.2d *Partition* § 33 (2000). Colorado has such a statute.

Section 38–28–101, C.R.S.2001, states that "[a]ctions for the division and partition of real or personal property or interest therein may be maintained by *any person having an interest in such property*" (emphasis added).

A life estate is an interest in real property. *See* 2 *Thompson, supra*, § 19.02. Accordingly, the holder of the life estate has the statutory right to partition.

Contrary to the daughter's assertion, *Federal Deposit Insurance Corp. v. Mars, supra*, did not hold that a life estate is not an interest subject to partition and *Mars* is also factually distinguishable.

There, the parties held "separate concurrent estates," *Federal Deposit Insurance Corp. v. Mars, supra*, 821 P.2d at 831, in that one party had an interest in the land while the other party had an interest only in the buildings on that land. Further, the trial court did not order partition, finding it would "constitute a waste." *Federal Deposit Insurance Corp. v. Mars, supra*, 821 P.2d at 831. Instead, the court ordered that the land be sold pursuant to § 38–28–107, C.R.S.2001, which provides: "[I]f ... the court finds that partition of the property cannot be made without manifest prejudice to the rights of any interested party, the court may direct the sale of such property at public sale upon such terms as the court may fix."

On appeal, a division of this court reversed the order of sale. Because neither party had a property interest in the other's estate and therefore had no common interest in the property, the division concluded the trial court could not order a sale of the land pursuant to § 38–28–107. The *Mars* court explained:

> [W]e have found no authority from any jurisdiction for the proposition that a court sitting in equity may order the sale of land in a case such as this, where the present possessory owner has undisputed fee title, in order to benefit one who holds no interest in the land, either present or prospective.

*Federal Deposit Insurance Corp. v. Mars, supra*, 821 P.2d at 832. The division in *Mars* did not address whether other types of interests could be partitioned.

■ Here, it is undisputed that the daughter holds a remainder interest in the addition and that the mother holds the corresponding life estate. Because they have a common interest in the property, we conclude the trial court did not err in determining the mother was entitled to maintain an action under § 38–28–101 for partition of her life estate from the daughter's remainder interest.

## B.

Both parties challenge the trial court's interpretation of their oral agreement pertaining to the life estate.

■ The existence of an oral contract, its terms and conditions, and the intent of the parties are questions of fact to be determined by the trier of fact. *See Huddleston v. Union Rural Electric Ass'n*, 841 P.2d 282, 291–92 n. 12 (Colo.1992).

■ If no conflict exists regarding the meaning of the terms used, the intent of the parties is to be determined by the court from those terms as a matter of law. If the court cannot ascertain the parties' intentions from those terms, the question becomes one of fact to be established by extrinsic evidence.

*Huddleston v. Union Rural Electric Ass'n, supra.*

We must accept the trial court's findings of fact unless they are so clearly erroneous as to have no support in the record. *Continental Western Insurance Co. v. Jim's Hardwood Floor Co.,* 12 P.3d 824 (Colo.App. 2000). However, we review de novo the questions of law arising in interpreting a contract. *Cruz v. Farmers Insurance Exchange,* 12 P.3d 307 (Colo.App.2000).

Here, it was undisputed that the parents agreed to pay the daughter approximately $48,000 to build the addition to the daughter's house, that the parents were to live in the addition for the rest of their lives, and that after they both died the addition was to become the daughter's sole property. The record reflects these were the only explicit terms of the oral agreement.

The statute of frauds was not in issue and the parties also do not dispute the trial court's determination, nor do we, that this agreement created a life estate in the parents that allowed them to reside in the addition and also gave the daughter a remainder interest in the addition for which she had no obligation to pay. *See Collins v. Shanahan,* 34 Colo.App. 82, 88, 523 P.2d 999, 1003 (1974)("The primary characteristic of a life estate in land is that the interest is limited by the life of some person."), *aff'd in part & rev'd in part,* 189 Colo. 169, 539 P.2d 1261 (1975). It is also undisputed that the life estate was to be measured by the life of the parent who lived longer.

At issue is whether the trial court erred in concluding the mother impliedly waived her right to bring an action for partition of the life estate. We agree with the mother that the trial court erred in reaching that conclusion.

The holder of an interest in land may expressly waive the right to partition. *See Twin Lakes Reservoir & Canal Co. v. Bond,* 157 Colo. 10, 401 P.2d 586 (1965); *see also McIntire v. Midwest Theatres Co.,* 88 Colo. 559, 560, 298 P. 959, 959 (1931)("[T]here is nothing inalienable about this right of partition. A tenant in common may contract it away....").

No one contends such an express waiver occurred here.

A waiver of the right to partition also may be implied when partitioning the interest would undermine a contract between the parties. *Twin Lakes Reservoir & Canal Co. v. Bond, supra; see also* 59A Am.Jur.2d *Partition* § 61 (2000).

Here, although the parties never raised the issue in their pleadings or at trial, the trial court concluded the mother had impliedly waived her right to bring a partition action, finding that the mother's life estate was limited and that only she could occupy the addition.

Relying on *Twin Lakes Reservoir & Canal Co. v. Bond, supra,* the trial court also determined that:

> [b]ecause the addition is to be [the daughter's] property after the deaths of both parents, *it is inherent in the agreement that the property could not be partitioned,* nor can either party be forced to sell her interest. Each party to the agreement waived any right of partition, for to partition the property would be a violation of the intent of the original agreement. (emphasis added)

We conclude there is no record support for the court's findings that the mother's life estate was limited, that only she could occupy the addition, and that partition of the property would be a violation of the intent of the original agreement.

Under the trial court's interpretation of the oral agreement, the mother had a life estate, but could not share it, rent it, or sell it. However, contrary to the trial court's findings, the record clearly reflects there was no express agreement between the parties concerning the mother's waiver of the right to partition, nor did the parties expressly agree to a term limiting the occupancy to only the mother. The mother and daughter both testified they did *not* discuss these matters. The daughter's testimony indicated that she personally believed the occupancy of the addition was limited to the mother. But, regardless of those personally held beliefs, the terms of the oral agreement express the

intent of the parties in creating the life estate.

The parties did agree, with regard to the daughter's remainder interest, that the daughter would acquire the property at no cost upon the mother's death. However, also contrary to the court's finding, there is no evidence in the record of any agreement limiting the mother's life estate interest in the property or suggesting the daughter would not have to pay for the mother's interest if the mother wished to partition her interest or if the daughter wished to acquire that interest before the mother's death.

*Twin Lakes Reservoir & Canal Co. v. Bond, supra,* does not support the result reached by the trial court and urged by the daughter on appeal. In *Twin Lakes, supra,* 157 Colo. at 22–23, 401 P.2d at 592, partitioning the property either physically or by sale would have destroyed a lease and an easement between the co-tenants, thus depriving one party of the benefit of the lease and easement. Thus, the court there denied partition.

The daughter's reliance on *McIntire v. Midwest Theatres Co., supra,* is similarly misplaced. In *McIntire, supra,* 88 Colo. at 560–61, 298 P. at 959, one of the co-tenants leased the other co-tenant's interest in the property, and the lease was secured by a mortgage. The court concluded there that to partition the property would have defeated the contract between the parties by releasing one co-tenant from the mortgage and the obligation to pay the other co-tenant under the lease.

Here, there was no evidence that partitioning the mother's interest would undermine or defeat the parties' oral agreement or violate any of its terms because the parties never agreed to limit who could reside in the addition, and partition would not deprive the daughter of the value of her remainder interest.

We therefore conclude the trial court erred in finding that the mother's life estate was limited, that it was "inherent in the [parties' oral] agreement that the property could not be partitioned," and that the mother had impliedly waived her right to partition.

### III. Present Value of the Life Estate

The mother next contends the trial court erred in calculating the present value of her life estate. We agree.

■ If the trial court applies the correct methodology, its award will not be set aside unless it is manifestly and clearly erroneous. However, the trial court's determination of value will not be upheld if the court applies an incorrect method. *DBA Enterprises, Inc. v. Findlay,* 923 P.2d 298 (Colo.App.1996).

■ Valuation cannot be based on mere speculation and conjecture, and the trial court has the responsibility to make reasonable findings that provide for a fair, equitable, and adequate calculation of value. *Sonoco Products Co. v. Johnson,* 23 P.3d 1287 (Colo.App.2001).

### A.

■ Here, after the trial court denied the mother the remedy of partition, the court nevertheless went on to enter a damages award, explaining that it was "to offer guidance" to the parties. The court determined the present value of the addition after subtracting the rental value realized by the mother during her occupancy. The court thus calculated damages using a method not urged by either party in the trial court or on appeal. The trial court did not indicate the legal basis for its calculation and the parties have cited no legal support for the methodology used. Nor do we find support for subtracting the rental value of the mother's past occupancy in determining present value.

We therefore conclude the trial court applied an incorrect methodology in valuing the mother's life estate, and the valuation must be set aside. *See DBA Enterprises, Inc. v. Findlay, supra.* In so concluding, we acknowledge that this is an issue arising infrequently and that the trial court had little guidance in determining the value of a life estate. We therefore address that issue.

### B.

The Colorado General Assembly has addressed the procedures for partitioning prop-

erty interests. *See* § 38–28–107. Section 38–28–108, C.R.S.2001, also provides: "The court shall direct the distribution of the net proceeds of such sale and any undistributed income from such property among the persons entitled thereto."

The General Assembly has offered no specific guidance on the exact issue before us, although it has determined the manner in which a life estate should be valued for the purpose of taxation. *See* § 39–23–116(1), C.R.S.2001. However, that statute has limited applicability in this case because it presupposes a proper value has already been placed on the life estate. We also are unaware of any Colorado appellate decisions applying § 39–23–116(1) or addressing the proper formula for valuing a life estate in a suit for partition.

### C.

Other jurisdictions have suggested the following approach in valuing life estates: (1) sell the property encumbered by the life estate; (2) give the holder of the life estate the interest or investment income on the proceeds during the rest of the measuring life; (3) distribute the proceeds from the sale to the remainderman at the expiration of the life estate. *See Cox v. Cox,* 262 S.C. 8, 202 S.E.2d 6 (1974)(quoting *South Carolina Savings Bank v. Stansell,* 160 S.C. 81, 158 S.E. 131, 134 (1931)); *see also Baskins v. Krepcik,* 153 Neb. 36, 43 N.W.2d 624 (1950); *Skidmore v. Austin,* 261 N.C. 713, 136 S.E.2d 99 (1964); 59A Am.Jur.2d *Partition* § 221 (2000).

However, caution is required in adopting this approach because these jurisdictions have statutory provisions different from those of Colorado. For example, as applied in *Cox v. Cox, supra,* South Carolina followed the common law rule that life estates are not subject to partition from the remainder interest and did not have a statute similar to § 38–28–101, which alters the common law rule.

Accordingly, we conclude this approach should not be used in determining the entitlement of the holder of a life estate in the event of a court-ordered partition sale.

### D.

Another method for valuing a life estate derives from the Code of Federal Regulations concerning estate and gift taxes. We conclude this methodology offers considerable guidance in valuing life estates and should be used, subject to the equitable adjustments discussed below.

Under 26 C.F.R. § 20.2031–7(a), "the fair market value of ... life estates ... is the present value of such interests, determined under paragraph (d) of this section."

Paragraph (d)(2)(iii) of that section contains the valuation methodology for life estates and provides in relevant part:

If the interest to be valued is the right of a person to receive the income of certain property, or to use certain nonincome-producing property ... for the life of one individual, *the present value of the interest is computed by multiplying the value of the property by the appropriate ... life interest actuarial factor (that corresponds to the applicable section 7520 interest rate and ... life interest period).*

26 C.F.R. § 20.2031–7(d)(2)(iii) (emphasis added).

The "section 7520 interest rate" is provided by the Internal Revenue Service in a revenue ruling in its monthly Internal Revenue Bulletin.

The appropriate table containing the applicable single life remainder factor is currently Table S and is found at 26 C.F.R. § 20 .2031–7(d)(7).

To complete the calculation, one must obtain the age of the measuring life and the proper interest rate for the month in which partition is ordered. The appropriate remainder factor is found by locating the age of the measuring life in the age column of Table S and connecting that age with the value in the column under the appropriate interest rate. Once that remainder factor is identified, it is subtracted from 1.000000 to determine the life estate factor (the table only pertains to the remainder interest). *See* 26 C.F.R. § 20.2031–7(d)(2)(iii). The value of

the property subject to the life estate is then multiplied by this factor.

The Supreme Court of Nebraska has applied this formula in valuing a trust interest and has explained its application in similar terms. *In re Estate of Myers*, 256 Neb. 817, 827, 594 N.W.2d 563, 570 (1999)(court observed that the Supreme Judicial Court of Maine had used a similar method to establish "the present value of a trust interest providing a fixed income by treating it as an annuity under the appropriate federal tax regulations"); *see In re Estate of Fisher*, 545 A.2d 1266 (Me.1988).

The Nebraska court clarified that it was not holding that "the tax valuation method is the *only appropriate method* for valuing the present value" of a trust interest, and the court also acknowledged that this method "is at best imperfect" and that "the whole problem of valuing life interests by resort to mortality tables is at best a matter of educated guesswork." *In re Estate of Myers, supra*, 256 Neb. at 828, 594 N.W.2d at 570 (emphasis added)(quoting *McMurtry v. Commissioner*, 203 F.2d 659, 666 (1st Cir.1953)).

We acknowledge there may be other appropriate methods for valuing a life estate and that the factual circumstances here are distinguishable from those in *Myers*. Nevertheless, the Nebraska court's explanation of how to apply the formula in 26 C.F.R. § 20.2031–7(d) offers considerable guidance in resolving the issue before us. In the absence of more specific direction from the General Assembly, we conclude this methodology generally should be used in valuing life estates, subject to the equitable considerations discussed below.

 Applying the tax valuation method here, the formula requires that we use a measuring life of seventy-one years because that was the mother's age at the time of the trial.

To find the applicable interest rate, we look to the revenue ruling determining the section 7520 interest rate for January 2001, which is the month that judgment entered. That ruling provides a 6.8% rate in Table 5. Rev. Rul.2001–3, 2001–3 I.R.B. 319. The remainder factor corresponding to a measuring life of 71 years and an interest rate of 6.8% is .46851. Subtracting this value from 1.000000, we arrive at a life estate factor of .53149.

To determine the present value of the mother's life estate in the addition, we next look at the property value of the addition. The trial court here found that property value to be $90,000, and we conclude there is record support for that factual finding. Then $90,000 is multiplied by the factor of .53149. Accordingly, using this methodology, the present value of the mother's life estate at the time of trial was $47,834.10. That figure may vary somewhat on remand because the mother's age will be different and the interest rate may also have changed.

Although we conclude the tax valuation method described here is an appropriate, logical, and consistent method of determining the present value of a life estate, because partition is an equitable remedy we also conclude the trial court has discretion, if it deems such value to be inequitable under all of the circumstances, to make adjustments that are fair and equitable. For example, the mother was also entitled to use other portions of the daughter's property, which may require an adjustment upward from the value calculated under the above formula. Other adjustments for the parties' specific circumstances may also be deemed appropriate by the court.

## IV. Conclusion

Because we have concluded the mother is entitled to partition of her life estate and the trial court applied an incorrect methodology in determining its value, we remand for a new hearing to determine the value of the mother's life estate under the correct methodology. If the court determines there are equitable reasons for deviating from the methodology set forth above, the court should make findings of fact explaining those reasons and the basis for its determination of value.

After the mother's property interest is valued, the daughter should be allowed to elect to purchase the mother's interest, as both parties have requested here. If the daugh-

ter does not elect to do so, the court should then determine, under § 38–28–107, whether physical partition would prejudice the rights of the parties. Should physical partition of the addition cause such prejudice, the court may order the sale of the addition and distribute the proceeds according to the parties' interests therein under § 38–28–108. The trial court may fix the terms of the sale, § 38–28–107, after considering the mother's entitlement to the life interest value calculated pursuant to 26 C.F.R. § 20.2031–7(d) and such equitable adjustments as the trial court may deem appropriate.

The judgment is reversed, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

Judge JONES and Judge NIETO concur.