DIANE D. GROSETH, NOW KNOWN AS DIANE D. REIDER,
APPELLEE, V. CHARLES J. GROSETH, APPELLANT.

600 N.W. 2d 159

Filed August 20, 1999. No. S-98-833.

Thomas C. Emery, of Emery & Blazek, for appellant.

Thomas R. Hickey for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## I. NATURE OF CASE

Charles J. Groseth appeals from an order of the Douglas County District Court modifying the child support and visitation provisions of a Massachusetts divorce decree that dissolved the marriage of Charles and Diane D. Groseth, now known as Diane D. Reider. Charles argues that the district court erred in apply-

ing the substantive law of Massachusetts, increasing Charles' child support obligations, modifying the decree's visitation scheme, and awarding attorney fees to Diane. For the reasons that follow, we affirm in part, vacate in part, and reverse and remand for further proceedings consistent with this opinion.

## II. PROCEDURAL HISTORY

Diane and Charles married in South Dakota on May 31, 1980, and divorced in Massachusetts on July 26, 1993. During their marriage, the parties had two children: Megan, born on June 25, 1986, and Jaclyn, born on April 11, 1989. Under the terms of a settlement agreement between the parties, which was incorporated into the divorce decree (hereinafter referred to collectively as "decree"), Diane had physical custody of the children with permission to relocate to another state and Charles enjoyed liberal visitation.

Pursuant to the terms of the decree, Charles was to pay Diane $1,740 per month in child support until any child became emancipated. By agreement of the parties, the decree defined emancipated as, among other things, reaching the age of 18 years unless the child began formal, full-time, undergraduate college education in the September following graduation from high school. If a child were to become so enrolled in college, such child would not become emancipated until abandoning such enrollment, graduating from college, or reaching the age of 22 years, whichever came first.

After their divorce, both parties remarried and moved away from New England. Diane ultimately moved to Nebraska, and Charles to Carrollton, Texas. After moving to Omaha with the children, Diane filed a complaint for modification in a Massachusetts court on August 7, 1996, asking for an increase in child support due to a material change in circumstances. Charles responded by asking the Massachusetts court to dismiss Diane's complaint as Massachusetts would be a less convenient forum than Nebraska, given that the parties were residing in Texas and Nebraska respectively.

On October 11, 1996, the Massachusetts court decided it would dismiss Diane's complaint if Charles voluntarily submitted himself to a Nebraska court to resolve the matter. Charles

complied by filing a petition in the Douglas County District Court on October 31, asking for modifications to the child support and visitation provisions of the decree. Consequently, the Massachusetts court dismissed the matter with prejudice on November 15.

On March 27, 1997, the district court ruled that Nebraska substantive law would apply to the modification dispute between Diane and Charles. Diane responded by filing a special appearance in the district court on December 2, asserting that Massachusetts had exclusive jurisdiction to modify the child support provisions of the decree. The district court overruled Diane's special appearance and took jurisdiction over the matter on January 26, 1998, but ultimately decided to apply the substantive law of Massachusetts instead of Nebraska.

The district court held a trial on February 5, 1998, and issued an order on July 28. By way of that order, the district court increased Charles' child support obligation from $1,740 per month to $2,537.16 per month pursuant to the child support guidelines of Massachusetts. The district court also made Charles' increased obligation retroactive to January 1, 1997, and ordered Charles to pay any arrearage at the rate of not less than $500 per month.

Additionally, the district court made various modifications to the visitation arrangements. Although neither party specifically prayed for attorney fees, the district court awarded fees to Diane in the amount of $3,000. Charles timely appealed. Other facts pertinent to this appeal are discussed, where appropriate, in the analysis below.

## III. ASSIGNMENTS OF ERROR

Charles assigns, restated and summarized, that the district court erred in (1) applying the substantive law of Massachusetts, instead of Nebraska, to the modification of child support proceedings; (2) refusing to admit the calculations from the Nebraska Child Support Guidelines into evidence; (3) imposing an unreasonable visitation schedule; (4) failing to address specific issues raised in Charles' amended petition; (5) preserving the other provisions of the decree; and (6) awarding attorney fees to Diane.

## IV. STANDARD OF REVIEW

■ This case calls for an interpretation of certain provisions in the Uniform Interstate Family Support Act (UIFSA), Neb. Rev. Stat. §§ 42-701 through 42-751 (Reissue 1993 & Cum. Supp. 1994). Statutory interpretation presents a matter of law which an appellate court determines independent of the conclusions reached by a lower court. *In re Estate of Myers*, 256 Neb. 817, 594 N.W.2d 563 (1999).

■ Moreover, we must determine whether the district court erred in excluding the Nebraska Child Support Guidelines from evidence. The admissibility of evidence is reviewed for an abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Deuth v. Ratigan*, 256 Neb. 419, 590 N.W.2d 366 (1999).

■ Generally, issues involving the modification of a divorce decree, child visitation, and the amount of child support are initially entrusted to the discretion of the district court, whose decisions are to be reviewed on appeal de novo on the record and will be affirmed absent an abuse of discretion. *Smith-Helstrom v. Yonker*, 253 Neb. 189, 569 N.W.2d 243 (1997).

■ Similarly, a district court's award or denial of attorney fees in a proceeding to modify a divorce decree will be upheld absent an abuse of discretion. See *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994).

## V. ANALYSIS

### 1. NEBRASKA LAW APPLIES

In his first assignment of error, Charles argues that the district court should have applied the substantive law of Nebraska instead of Massachusetts. The outcome of this issue is governed by the UIFSA, particularly, §§ 42-709, 42-716, 42-739, and 42-746. The Legislature amended portions of the UIFSA by enacting 1997 Neb. Laws, L.B. 727, which amendments became operative on January 1, 1998. However, the amendments did not alter any of the statutes pertinent to this case in a way that would impact its outcome.

The UIFSA is of recent vintage, the model act only having come into existence in 1992. See Unif. Interstate Family Support Act Background Information, 9 U.L.A. 350-51 (Supp.

1999). Consequently, neither this court nor any other appellate jurisdiction has confronted the choice-of-law issue presented by the instant appeal. This choice-of-law question reveals an ambiguity in the UIFSA capable of producing more than one possible result; to be precise, the substantive law of either Nebraska or Massachusetts could potentially apply to the circumstances presented in the instant case.

 In a case of ambiguity, with more than one possible result, we construe the statute in a way that best achieves the purposes of the legislative enactment. See *Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev.*, 251 Neb. 852, 560 N.W.2d 436 (1997).

### (a) Text of Controlling Statutes

Section 42-709 (Reissue 1998) reads in pertinent part:

(a) A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child support order:

(1) as long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

(2) until all of the parties who are individuals have filed written consents with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

Meanwhile, § 42-716 (Reissue 1998) states:

Except as otherwise provided by the Uniform Interstate Family Support Act, a responding tribunal of this state:

(1) shall apply the procedural and *substantive* law, *including the rules on choice of law*, generally applicable to similar proceedings originating in this state and may exercise all powers and provide all remedies available in those proceedings; and

(2) shall determine the *duty of support and the amount payable* in accordance with the support guidelines established under section 42-364.16.

(Emphasis supplied.) Section 42-739 (Reissue 1998), entitled "Choice of law," in part mandates: "(a) The law of the issuing state governs the nature, extent, amount, and duration of *current* payments and other obligations of support and the payment of

arrearages under the order." (Emphasis supplied.) Finally, § 42-746 (Reissue 1998) provides:

(a) After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if section 42-747.01 does not apply and after notice and hearing it finds that:

(1) the following requirements are met:

(i) the child, the individual obligee, and the obligor do not reside in the issuing state;

(ii) a petitioner who is a nonresident of this state seeks modification; and

(iii) the respondent is subject to the personal jurisdiction of the tribunal of this state; or

(2) the child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this state and all of the parties who are individuals have filed written consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order. However, if the issuing state is a foreign jurisdiction that has not enacted a law or established procedures substantially similar to the procedures under the Uniform Interstate Family Support Act, the consent otherwise required of an individual residing in this state is not required for the tribunal to assume jurisdiction to modify the child support order.

*(b) Modification of a registered child support order is subject to the same requirements, procedures, and defenses that apply to the modification of an order issued by a tribunal of this state and the order may be enforced and satisfied in the same manner.*

(c) A tribunal of this state may not modify any aspect of a child support order that may not be modified under the law of the issuing state. If two or more tribunals have issued child support orders for the same obligor and child, the order that controls and must be so recognized under section 42-711 establishes the aspects of the support order which are nonmodifiable.

(d) On issuance of an order modifying a child support order issued in another state, a tribunal of this state

> becomes the tribunal having continuing, exclusive jurisdiction.

(Emphasis supplied.)

For the sake of completeness, it is worth noting that Massachusetts has also adopted the UIFSA. See Mass. Gen. Laws ch. 209D, § 1-101 et seq. (1998). Moreover, the counterpart UIFSA statutes in Massachusetts and Nebraska that are relevant to this case are, for all intents and purposes, identical. Compare § 42-709, with Mass. Gen. Laws ch. 209D, § 2-205 (1998) (establishing conditions for state to maintain continuing, exclusive jurisdiction); § 42-716, with Mass. Gen. Laws ch. 209D, § 3-303 (1998) (setting forth application of law of this state); § 42-739, with Mass. Gen. Laws ch. 209D, § 6-604 (1998) (dictating how to make choice of law); and § 42-746, with Mass. Gen. Laws ch. 209D, § 6-611 (1998) (providing procedure for modifying child support order from another state).

### (b) Statutory Interpretation

■ The Nebraska enactment of the UIFSA is patterned on the model act and follows that model nearly to the letter. Compare §§ 42-701 through 42-751 with the Unif. Interstate Family Support Act §§ 101 through 905 (amended 1996), 9 U.L.A. 361-442 (Supp. 1999). An express provision in both the model and the Nebraska enactment mandates that the UIFSA shall be construed to effectuate its general purpose to make uniform the law with respect to the subject of the act among states enacting it. § 42-751 (Reissue 1998); Unif. Interstate Family Support Act § 901, 9 U.L.A. 441 (Supp. 1999).

■ Therefore, we properly look to the official comments contained in the model act for some guidance in an effort to ascertain the intent of the legislation. See *In re Estate of Myers*, 256 Neb. 817, 594 N.W.2d 563 (1999) (turning to comments accompanying Uniform Probate Code to construe Neb. Rev. Stat. § 30-2319 (Reissue 1995)).

In construing the relevant statutes, it is important to bear in mind that, under § 42-702(9) and (16) (Reissue 1998), Massachusetts is the "issuing state" in the instant case and Nebraska is the "responding state." See, also, Mass. Gen. Laws ch. 209D, § 1-101 (1998) (defining terms); Unif. Interstate

Family Support Act § 101, 9 U.L.A. 361 (Supp. 1999) (defining terms).

█ With that in mind, there is no doubt that the courts of Massachusetts lost continuing, exclusive jurisdiction to modify the child support provisions of the decree under the UIFSA once Charles moved to Texas and Diane moved to Nebraska with the children. See Mass. Gen. Laws ch. 209D, § 2-205 (1998). See, also, § 42-709(1); Unif. Interstate Family Support Act § 610, comment, 9 U.L.A. 429 (Supp. 1999) (discussing conditions of continuing, exclusive jurisdiction).

█ Moreover, under § 42-746(a)(1), the Douglas County District Court acquired jurisdiction to modify the child support provisions once the following three conditions were met: (1) Charles, Diane, and the children moved away from New England; (2) Charles, who is a resident of Texas, sought modification in Nebraska; and (3) Diane became subject to the personal jurisdiction of the district court by virtue of living in Omaha.

Even though Massachusetts lost and the district court gained jurisdiction to modify the child support provisions, the question remains as to which substantive law applies to this modification action—that of Nebraska or Massachusetts. Under § 42-716, the substantive and procedural law of Nebraska presumptively should apply; however, that section states that the Nebraska rules on choice of law apply as well.

There is a specific choice-of-law statute in both Nebraska's enactment of the UIFSA and the model act itself. Compare § 42-739(a) with Unif. Interstate Family Support Act § 604, 9 U.L.A. 422 (Supp. 1999). Under that choice-of-law provision, the substantive law of the issuing state—Massachusetts in the instant case—"governs the nature, extent, amount, and duration of *current payments* and other obligations of support and the payment of arrearages under the order." (Emphasis supplied.) § 42-739(a).

█ It is implicit, by the use of the term "current" in § 42-739(a), that the substantive law of Massachusetts (the issuing state) applies merely to petitions to *enforce existing* orders of the issuing state and not to subsequent orders resulting from petitions to *modify* child support orders in a responding state.

Indeed, "current payments and other obligations" cease to be "current" once they are modified.

 Moreover, once a responding state assumes continuing, exclusive jurisdiction and modifies an issuing state's support order, the responding state becomes the issuing state. See § 42-746(d). See, also, Unif. Interstate Family Support Act § 611, comment, 9 U.L.A. 429 (Supp. 1999) (explaining that one of UIFSA's goals is to eliminate multiple support orders by establishing scheme of continuing, exclusive jurisdiction), and Unif. Interstate Family Support Act § 604, comment, 9 U.L.A. 422 (Supp. 1999) (axiomatically stating that loss of continuing, exclusive jurisdiction by issuing state and subsequent modification by responding state results in order becoming " 'order of the responding state' ").

In other words, once Nebraska assumes continuing, exclusive jurisdiction and becomes the issuing state under § 42-746, the substantive law of Nebraska "governs the nature, extent, amount, and duration of current payments and other obligations of support." § 42-739(a).

The official comment in the Unif. Interstate Family Support Act § 604, 9 U.L.A. 422 (Supp. 1999), underscores the notion that the choice-of-law language in § 42-739(a) was intended for enforcement actions and not for modification proceedings. In particular, it explains:

> This section identifies situations in which local law is inapplicable. *The basic principle of [UIFSA] is that* throughout the process the controlling order remains the order of the issuing state, and that *responding states only assist in the enforcement of that order. Absent a loss of continuing, exclusive jurisdiction and a subsequent modification of the order, the order never becomes an "order of the responding state."*

(Emphasis supplied.) Unif. Interstate Family Support Act § 604, comment, 9 U.L.A. 422 (Supp. 1999).

Meanwhile, the UIFSA statute that generally addresses the application of Nebraska law explicitly mandates that courts here apply Nebraska law and support guidelines when determining the duty and amount of child support. § 42-716(2). This interpretation is consistent with the official comment in the Unif.

Interstate Family Support Act § 303, comment, 9 U.L.A. 389 (Supp. 1999), which reads:

> Historically states have insisted that forum law be applied to support cases whenever possible. This continues as a key principle of UIFSA. In general, a responding tribunal has the same powers in an action involving interstate parties as it has in an intrastate case. This inevitably means that the Act is not self-contained; rather, it is *supplemented by the forum's statutes and procedures* governing support orders. *To [e]nsure the efficient processing of the huge number of interstate support cases, it is vital that decision-makers apply familiar rules of local law to the maximum degree possible.* This must be accomplished in a manner consistent with the overriding principle of UIFSA that enforcement is of the issuing tribunal's order, and that the responding state does not [need to] make the order its own as a condition of enforcing it.

(Emphasis supplied.)

Similarly, the UIFSA statute on child support modification procedures states that the substantive law of the responding state (Nebraska in this case) should control. See § 42-746(b) (stating that modifications are subject to same requirements, procedures, and defenses that apply to modification of Nebraska child support order). This construction is bolstered by the official comment in Unif. Interstate Family Support Act § 610, 9 U.L.A. 428, 429-31 (Supp. 1999). That comment states:

> As long as the issuing state retains its continuing, exclusive jurisdiction over its child support order, a registering sister state is precluded from modifying that order. . . . However, *if the issuing state no longer has a sufficient interest in the modification of its order* under the factual circumstances described in this section, after registration the responding state may assume the power to modify. . . .
>
> . . . .
>
> Under UIFSA, registration is subdivided into distinct categories: registration for enforcement, for modification, or both. UIFSA is based on recognizing the truism that when a foreign support order is registered for enforcement, the rights of the parties affected have been previously liti-

gated. Because the obligor already has had a day before an appropriate tribunal, an enforcement remedy may be summarily invoked. On the other hand, modification of an existing order presupposes a change in the rights of the parties. . . .

Under UIFSA a tribunal may modify an existing child support order of another state only if certain quite limited conditions [as set out in § 42-746(a)] are met . . . . The intent [of this scheme] is to eliminate multiple support orders to the maximum extent possible consistent with the principle of continuing, exclusive jurisdiction that pervades the Act.

. . . .

Subsection (b) states that if the forum has modification jurisdiction because the issuing state has lost continuing, exclusive jurisdiction, the proceedings will generally follow local law with regard to modification of child support orders. However, Subsection (c) prevents the modification of any final, nonmodifiable aspect of the original order. For example, if child support was ordered through age 21 in accordance with the law of the issuing state and the law of the forum state ends the support obligation at 18, modification by the forum tribunal may not affect the duration of the support order to age 21.

(Emphasis supplied.)

Taken together, these comments and proper statutory construction direct that the substantive law of Massachusetts would apply to a proceeding for a modification of child support if Massachusetts had continuing, exclusive jurisdiction over the child support order; for instance, if one of the parties still lived in Massachusetts. However, once Nebraska assumes continuing, exclusive jurisdiction, then Nebraska's judges are to apply familiar, local rules. In doing so, Nebraska courts are to apply Nebraska's substantive law to any provision of the child support order that could have been modified under Massachusetts law; by the same token, Nebraska may not modify any aspect of the Massachusetts child support order which could not have been modified in Massachusetts. See § 42-746(b) and (c).

## (c) Effect of § 42-747.01

Notwithstanding that, Diane asserts that the Legislature resolved the choice-of-law question in 1997 by passing § 42-747.01 (Reissue 1998). Section 42-747.01 expressly mandates that Nebraska's "procedural and substantive law" shall apply to the modification of another state's child support order if both parties now reside in Nebraska and the children no longer reside in the issuing state. Diane argues that the Legislature could have adopted the same explicit language in § 42-746(b) that it did in § 42-747.01 if it intended such a result. Diane points out that the Legislature instead chose to leave out such language in § 42-746(b), implying that only Nebraska *procedural* law applies to the modification of another state's child support order. Diane asserts that § 42-747.01 details the exclusive situation where the substantive law of Nebraska would apply to the modification of another state's child support order.

We do not agree. Section 42-747.01 was enacted simply because § 42-746(a) demands that a parent who files for a modification of child support in a responding state must be a nonresident of the responding state or that both parties file written consents in the issuing state. Thus, if both parents had moved to a responding state, neither parent could file for modification there under § 42-746(a) unless both parents filed written consents in the issuing state. See Unif. Interstate Family Support Act § 613, comment, 9 U.L.A. 435 (Supp. 1999) (explaining that purpose of amendment was to expressly state that which previously was thought "to be obvious; an action between two citizens of the same state [although concerning order initially issued in another state] is not a matter for interstate concern or application").

Clearly, with Charles living in Texas and Diane in Nebraska, there remains a matter of interstate concern in the instant matter—albeit not one with which Massachusetts is concerned. See § 42-709 (providing that issuing state loses continuing, exclusive jurisdiction under these circumstances); Unif. Interstate Family Support Act § 611, comment, 9 U.L.A. 429 (Supp. 1999) (stating that issuing state no longer has "sufficient interest in the modification of its order" upon losing continuing, exclusive jurisdiction).

The interstate concern here is between residents of Nebraska and Texas. Indeed, it is this interstate concern and a sense of "rough justice" that underlies the scheme of § 42-746(a)(1)— which forces Diane to litigate in Texas if she wishes to modify the child support obligations, and Charles to litigate in Nebraska if he wishes to modify the obligations. See Unif. Interstate Family Support Act § 611, comment, 9 U.L.A. 429, 430 (Supp. 1999) (discussing "rough justice" policy behind statute).

Diane also points out that § 42-746(c) precludes a Nebraska court from modifying any aspect of a child support order that may not have been modified in Massachusetts. Be that as it may, Massachusetts certainly could have modified the amount of Charles' child support obligation. See, *Bush v. Bush*, 402 Mass. 406, 523 N.E.2d 259 (1988); *Bassette v. Bartolucci*, 38 Mass. App. Ct. 732, 652 N.E.2d 623 (1995). Hence, so too can Nebraska.

### (d) Conclusion

In sum, we must presume that the Legislature intended a sensible, rather than an absurd, result. *State ex rel. Neb. Health Care Assn. v. Dept. of Health*, 255 Neb. 784, 587 N.W.2d 100 (1998). The most sensible approach in an action brought under § 42-746 to modify a child support order issued by another state is to apply the substantive law of the responding state. We see no persuasive reason why the law of an original issuing state should play a role in deciding the amount of a child support obligation when neither party continues to raise children or earn an income there. It is more sensible to apply the law of the state where at least one party is earning income or raising the children because that substantive law more accurately takes into account the cost of living and factors of raising children in that locale.

In the final analysis, a court must look to a statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *In re Invol. Dissolution of Battle Creek State Bank*, 254 Neb. 120, 575 N.W.2d 356 (1998). Section 42-716 imposes a strong presumption that the substantive law of Nebraska applies. See, also, Neb. Rev. Stat. § 42-364.16 (Reissue 1998) (creating rebuttable presumption favoring application of

Nebraska Child Support Guidelines). Rather than insisting on explicit supporting language, we honor that presumption absent express language to the contrary. To do otherwise would defeat the purpose of § 42-716. Thus, we conclude that the district court erred in failing to apply the substantive law of Nebraska.

### 2. ADMISSIBILITY OF NEBRASKA CHILD SUPPORT GUIDELINES

Because the substantive law of Nebraska is applicable to this case, the district court abused its discretion in refusing to admit the relevant calculations from the Nebraska Child Support Guidelines into evidence. Thus, we determine that the district court should admit and utilize calculations from the Nebraska Child Support Guidelines on remand.

### 3. TERMS OF VISITATION SCHEDULE

Charles complains that certain restrictions in the visitation schedule imposed by the district court are unreasonable. The district court decided:

> As to each child, Charles shall have four (4) consecutive weeks summer visitation until such child completes the eighth grade. After each such child completes the eighth grade, Charles may have up to six (6) weeks summer vacation, subject to the following provisions: (1) After a child has completed the eighth grade, no summer visitation shall interfere with said child's summer activities, unless substantially similar activities are provided in the city of Charles' residence . . . .

Among other things, the district court also ruled:

> Whenever Charles is in Omaha, he shall have liberal visitation with the parties' minor children, to be arranged by Charles and Diane . . . . [U]nder no circumstance shall such visitation require the children to [be] away from Diane's home past 9 p.m. so long as either child has not yet reached the eighth grade.

As for the children's education, the district court ordered that "Charles may attend and participate in any regularly-scheduled school conference, but under no circumstances shall Charles initiate any other contact with the teachers of the parties' minor children." Finally, the district court allowed Charles "telephone

contact with the minor children only between the hours of 6:30 p.m. and 8:30 p.m., Central Standard or Daylight Time, for calls of not more than ten (10) minutes duration per child."

Charles asserts that these restrictions potentially preclude summer visitation after the children complete middle school because the restrictions require the children's consent to such visitation. Moreover, Charles argues that the order prevents any overnight visitation during the times that Charles is in Omaha and hinders his ability to monitor the children's education. As with all the above-noted conditions, Charles claims that the telephone restrictions are unduly restrictive and unwarranted by the evidence in this case.

However, we conclude, after a de novo review of the record, that the boundaries of Charles' visitation are reasonable given the evidence at trial. For instance, Diane testified that Charles would phone the children three to four times per day and often during the morning hours as the children prepared for school. Moreover, the same telephone restrictions apply to Diane when the children visit Charles in Texas. The evidence also revealed that Charles would occasionally remove the children early from school and have them miss their activities when Charles came to visit the children. Diane testified that Charles justified this conduct by saying that his time with the children was more important than their schooling.

For good reason, issues involving the modification of child visitation are initially entrusted to the discretion of the district court, whose decisions are to be reviewed on appeal de novo on the record and will be affirmed absent an abuse of discretion. *Smith-Helstrom v. Yonker*, 253 Neb. 189, 569 N.W.2d 243 (1997). Moreover, the best interests of the children are a substantial concern in determining visitation. See *Huffman v. Huffman*, 236 Neb. 101, 459 N.W.2d 215 (1990).

After conducting a de novo review of the record, we are persuaded that the visitation schedule, as set by the district court, furthers the best interests of the children and the secondary interests of both parents. The terms of the visitation schedule are not unreasonable, and the district court did not abuse its discretion in imposing those terms. As such, this assignment of error is without merit.

### 4. FAILURE TO ADDRESS ISSUES RAISED IN CHARLES' PETITION

Charles complains that the district court's modification order did not address issues raised in Charles' amended petition to modify; namely, reductions in child support payments for visitation periods of 4 or more weeks, reductions for visitation-related transportation costs, the amount of reduction in that obligation when the first child reaches emancipation, and the duration of Charles' child support obligation.

With regard to the duration of Charles' child support obligation, under the UIFSA, a district court cannot modify any aspect of a child support order which may not be modified under the law of the responding state. § 42-746(c). See, also, Unif. Interstate Family Support Act § 611, 9 U.L.A. 429 (Supp. 1999) (indicating that drafters specifically intended for this provision to apply to duration of child support orders when age of majority differs in issuing and responding states). Thus, if the duration of Charles' obligation could not be modified in Massachusetts then it could not be modified in Nebraska.

Although it appears that Massachusetts could have modified the duration of Charles' child support obligation, see *Manes v. Manes*, 370 Mass. 235, 347 N.E.2d 668 (1976), we note that Charles' child support obligations were established in a formal settlement agreement that became incorporated into the decree. Neither party has asserted that the settlement agreement was entered involuntarily or that the terms of the agreement were unconscionable.

The substantive law in both Nebraska and Massachusetts affords courts jurisdiction to enforce court-approved settlement agreements wherein a parent voluntarily promises to support a child beyond the age of majority. Compare *Zetterman v. Zetterman*, 245 Neb. 255, 512 N.W.2d 622 (1994), with *Swenson v. Wood*, 12 Mass. App. Ct. 923, 424 N.E.2d 1140 (1981).

Thus, while the district court would have had jurisdiction to modify the duration of Charles' child support obligation, based on the evidence, we find no abuse of discretion in the district court's refusal to reduce the duration of Charles' obligation in the instant case.

With reference to the issues regarding reductions in child support for extended visitation periods and transportation costs, and

a child support reduction when the first child reaches emancipation, we point out that this cause is being remanded for further proceedings based on the provisions of the Nebraska Child Support Guidelines. These issues should properly be addressed at the trial court level on remand, based on the child support guidelines, and we decline to further address these matters on appeal.

### 5. PRESERVING DECREE'S OTHER PROVISIONS

■ Charles also claims that the district court erred in preserving the other provisions in the decree. However, Charles does not discuss this issue in his appellate brief. For an appellate court to consider an assignment of error, not only must the error be assigned by the asserting party, it must also be discussed in that party's brief. *Varela v. Fisher Roofing Co.*, 253 Neb. 667, 572 N.W.2d 780 (1998); *State v. Sommerfeld*, 251 Neb. 876, 560 N.W.2d 420 (1997). Thus, we do not address this issue.

### 6. AWARDING ATTORNEY FEES TO DIANE

Charles assigns error to the district court for awarding Diane $3,000 in attorney fees when Diane did not specifically request as much in her answer and cross-petition.

■ We have recently held that a party against whom attorney fees are charged must have been given an opportunity to present evidence against the application of such an award. See *Winter v. Department of Motor Vehicles, ante* p. 28, 594 N.W.2d 642 (1999). Implicit in that holding is the need for the party against whom attorney fees are awarded to have prior notice of the potential for such an award. See *id.*

Because Diane did not specifically pray for attorney fees in her answer and cross-petition, Charles had neither prior notice of the potential for such an award nor an opportunity to present evidence against the propriety of such an award. Therefore, the award of attorney fees is vacated; the district court may revisit the issue of attorney fees on remand if requested to do so by the parties.

### VI. CONCLUSION

In summary, we conclude that the district court erred in applying the substantive law of Massachusetts, instead of that of

Nebraska, in determining the financial obligations relating to child support and visitation-related transportation expenses. Moreover, we determine that the district court erred in awarding $3,000 in attorney fees to Diane, and we vacate that portion of the judgment. We do, however, affirm that portion of the district court's judgment setting forth the terms of the visitation schedule in the instant case.

Therefore, the judgment of the district court is affirmed in part, vacated in part, and in part reversed and remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

STEPHAN, J., not participating.